METRO v FORD MOTOR COMPANY

GRIFFIN v FORD MOTOR COMPANY

Docket Nos. 96933, 96934. Submitted December 9, 1987, at Detroit.
Decided March 11, 1988. Leave to appeal denied in Metro, 431
Mich —.

Patrick Metro and Willie Griffin were employees of Ford Motor
Company and subject to the collective bargaining agreement
between their employer and the United Auto Workers. Each
man suffered injuries on the job leaving them able to perform
only jobs compatible with their medical restrictions. Each was
laid off and each brought an action in the Wayne Circuit Court
alleging handicap discrimination. Metro claimed that the col-
lective bargaining agreement allowed the employer to waive
certain restrictions and permit him to bump into a position
compatible with his medical restriction and that Ford's sole
motivation for not waiving the restriction was discrimination.
The court, Michael J. Connor, J., dismissed the case, holding
that plaintiff's claim was preempted by federal labor law.
Griffin made the same claim and the court, John H. Gillis, Jr.,
J., made the same ruling. Each plaintiff appealed. The appeals
were consolidated by the Court of Appeals.

The Court of Appeals *held*:

Questions relating to what the parties to a labor agreement
agreed and what legal consequences were intended to flow from
breaches of that agreement are preempted by § 3 of the Labor
Management Relations Act. The rulings below were proper.

Affirmed.

LABOR RELATIONS — PREEMPTION — LABOR MANAGEMENT RELATIONS
ACT.

Questions relating to what the parties to a labor agreement
agreed and what legal consequences were intended to flow from
breaches of that agreement are preempted by § 34 of the Labor
Management Relations Act (29 USC 185).

---

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 546 *et seq.*, 2003.

Constitutionality and construction of sec. 301(a) of Labor Manage-
ment Relations Act (29 USC sec. 185(a)) conferring jurisdiction on
Federal District Courts in actions for violation of contract be-
tween employer and labor organization. 16 L Ed 2d 1143.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Alan B. Posner*), for plaintiffs.

*Willie E. McGlory, Arnold G. Shulman* and *Victor G. Marrocco,* for defendant.

Before: M. J. Kelly, P.J., and MacKenzie and P. D. Schaefer,* JJ.

Per Curiam. These consolidated cases were brought by former employees of defendant who alleged employment discrimination under the Michigan Handicappers' Civil Rights Act. In both cases defendant's motions for summary disposition, brought pursuant to MCR 2.116(C)(8)and (10), were granted. Each trial court concluded that plaintiffs' claims were preempted by federal labor law, specifically, § 301 of the Labor Management Relations Act, 29 USC 185.

The basis for each former employee's claim is similar. Both plaintiff Patrick Metro and plaintiff Willie Griffin were members of the United Auto Workers union and subject to a collective bargaining agreement between the union and defendant.

Plaintiff Patrick Metro had been employed by defendant since 1963. After being transferred to defendant's Michigan Casting Center in 1975, Metro fractured his hip. He returned to work at the casting center in 1977. Subsequently, the Michigan Casting Center closed and Metro was called back to work in the Rouge Complex, pursuant to the collective bargaining agreement. Metro was offered work at the Dearborn Assembly Plant, but declined this position. Metro was then offered two other entry level positions; however, his physical limitations (the result of his hip injury), led to his disqualification and consequent layoff. On Au-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gust 13, 1982, Metro's application for disability retirement was granted. Later, Metro became aware that other employees, with less seniority than he, were performing jobs compatible with his medical restrictions. Consequently, on April 3, 1984, Metro filed this action alleging handicap discrimination and retaliation in anticipation of a workers' compensation claim.

Plaintiff Griffin's fact setting is remarkably similar. Griffin had been employed by defendant since 1967. He too was transferred to the Michigan Casting Center, where he worked until that operation was closed in 1981. Griffin had also previously suffered an injury which resulted in permanent medical restrictions on him. Despite his physical limitations, Griffin had been able to perform his job as a maintenance worker while he was assigned to the Michigan Casting Center. Subsequent to the closing of the Michigan Casting Center, Griffin had a right to exercise his seniority and bump into entry level positions in the Rouge Complex. Griffin was offered a production job on September 2, 1982, but his medical restrictions made it impossible for him to perform this operation. He was consequently disqualified and laid off. On June 28, 1984, Griffin filed suit against defendant, alleging handicap discrimination and retaliation in anticipation of a workers' compensation claim.

The claims of plaintiffs are now limited to their discrimination claims. The workers' compensation claims were abandoned. The trial court in Metro, at the hearing on defendant's motion, summarized Metro's factual argument (which is essentially the same claim made by Griffin): Metro claimed that after he was laid off employees of defendant with less seniority were performing jobs compatible with his restrictions, that defendant refused to permit him to bump into one of those positions

because defendant required him to first complete a thirty-day qualification period at an entry level position before he could exercise his seniority right to bump into a favored position, that this thirty-day period for qualification was not mandatory, but per the collective bargaining agreement it could be waived, and that defendant's only motivation not to waive the requirement was discrimination.

The sole issue on appeal is whether the trial courts erred in these two cases by ruling that plaintiffs' claims of handicap discrimination were preempted by federal labor law. Although "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law" the Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement" are preempted by § 301 of the Labor Management Relations Act, 29 USC 185. *Allis-Chalmers Corp v Lueck,* 471 US 202, 211; 105 S Ct 1904; 85 L Ed 2d 206 (1985).

Although plaintiffs argue that resolution of their claims would not involve interpretation of the collective bargaining agreement, both plaintiffs rely on provisions in that agreement as a basis for their discrimination claim. It is clear that both plaintiffs rely on seniority rights, which are derived solely from the collective bargaining agreement. Likewise, both plaintiffs argue that the collective bargaining agreement gave defendant the discretion to waive the thirty-day qualification period, and its refusal to do so stymied plaintiffs from bumping into favorable positions.

It is as obvious to this Court as it was to the two trial courts that resolution of plaintiffs' claims

involves interpretation of the collective bargaining agreement. Therefore, the trial courts' determinations, that federal labor law governs, were not erroneous. *Cuffe v General Motors Corp,* 166 Mich App 766; 420 NW2d 874 (1988). The claims of plaintiffs are inextricably intertwined with the provisions of the collective bargaining agreement and any discrimination claim is dependent upon analysis of the terms of the collective bargaining agreement.

The general rule is that, where federal labor policy governs, an individual employee must attempt to use the contract grievance procedure agreed upon by the employer and the union. *Republic Steel Corp v Maddox,* 379 US 650, 652; 85 S Ct 614; 13 L Ed 2d 580 (1965). *Cuffe, supra.* The grievance procedure afforded by the collective bargaining agreement provided plaintiffs their exclusive remedy (there being no issue raised as to the union's breach of its duty of fair representation).

Affirmed.