# State of Vermont v. Charles J. Dion

[578 A.2d 101]

No. 89-153

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed June 1, 1990

*Jane Woodruff*, Orleans County State's Attorney, Newport, and *Rosemary Hull, Gary Kessler* and *Allison Hastings*, Student Intern (On the Brief), Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Robert Katims* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Dooley, J.** Defendant, Charles J. Dion, was convicted by a jury of hindering a deputy game warden (Warden) in the execution of his law enforcement duties, in violation of 13 V.S.A. § 3001. Defendant appeals, claiming two grounds for reversal: (1) the lower court did not instruct the jury that the "hindering" must be an illegal interference and, as a result, failed to include an essential element of the charge; and (2) there was insufficient evidence, even when viewed in a light most favorable to the State, to prove that defendant was guilty beyond a reasonable doubt. We affirm.

On October 4, 1988, the State filed an information[1] charging defendant with hindering a law enforcement officer acting under the authority of the State in the execution of his office, in violation of 13 V.S.A. § 3001. At trial, the prosecution called two witnesses: the Warden involved, and a warden-trainee. They testified that defendant hindered them in the performance of their duties as follows. On April 23, 1988, the Warden was patrolling the closed fishing area of the Clyde River, when, from his motor vehicle, he noticed a person standing on a rock out in the water. Using binoculars, the Warden also observed another person, whom he recognized. Both boys had rocks in their hands and were throwing them at the fish in the river. The Warden witnessed the unidentified boy throw a rock and kill a fish. He watched as the two boys walked back down the river toward a plank bridge, where he proceeded down the hill to confront the boys and charge them with a fish and game violation.[2]

The Warden attempted to process the first boy "to get all the information to write him a ticket." The boy denied any wrongdoing, stating "I didn't do anything. You didn't see me do anything. I didn't take any fish." Shortly thereafter, an older youth arrived and asked what was going on. The youth interceded and

---

[1] The information originally stated that defendant "[d]id then and there *attempt* to hinder a law enforcement officer." This was amended on February 28, 1989 to read "[d]id then and there hinder a law enforcement officer."

[2] The rock apparently killed a spawning walleye fish. The Warden testified that he was unsure of what charge would be issued. He stated the possible charges would be taking a fish by illegal means, fishing in a closed area, "or depending on the license status, all of that."

stated, "Why don't you leave him alone—and get out of here." The youth became more vociferous as things progressed and told the Warden, "I'll deck you, it won't bother me."

Soon thereafter, defendant, an adult male, arrived on the scene. He asked the youth, "What's going on?" After finding out the details, defendant told the Warden to "get the hell out of here. You got nothing on him, leave him alone." The Warden responded, "Please, sir, stay out of this. This doesn't concern you, it's a Fish & Game violation." Defendant continued to threaten the Warden and stated, "You're on my territory now. Get the hell out of here. I'll get your ass, and I'll get your ass good."

The Warden also testified that as the atmosphere became more heated, he again told both defendant and the older youth to "mind their own business," but they failed to pay any attention to that warning. The Warden then put his hand on the arm of the boy who had killed the fish in an effort to escort him back to his truck for processing. Both defendant and the older youth interceded, stating, "He's not going anywhere with you," and physically pulled the boy away from the Warden. Since it was his opinion that the matter had escalated beyond control, the Warden then radioed for assistance.

The warden-trainee arrived in response to the call, and observed a confrontation going on where two men were waving their arms in the air. These two men were later identified as the older youth and the defendant. The warden-trainee also testified that defendant said, "Get out of here. You don't have anything on him. You're not taking him anywhere."

More persons assembled at the scene, including a Newport police officer. The situation calmed down until another individual physically pushed the Warden back with his chest. Thereafter, the Warden was finally able to take the boy over to the truck for processing.

After the State rested, the defendant put on a number of witnesses, including most of the persons present at the scene, to testify that defendant never threatened the Warden. They also testified that the boy pulled away from the Warden without help from the defendant.

Following the testimony, a charge conference was held, where the trial judge proposed the following charge:

The state must prove beyond a reasonable doubt that Charles Dion, number one, hindered; two, a law enforcement officer; three, while the law enforcement officer was acting under the authority of the State; and that four, Dion knew or reasonably should have known that the person was a law enforcement officer acting under the authority of the State; and five, knew or reasonably should have known that his, Dion's, conduct would hinder the officer; and that six, Dion had no legal right to hinder the officer.

The State objected to part six of the proposed instruction, arguing that lack of legal right was not an element of the offense since it was not set forth in the statute, 13 V.S.A. § 3001. The trial judge agreed that the lack of legal right was not relevant and eliminated the sixth element from the jury charge. The final jury charge read:

The state must prove beyond a reasonable doubt that Mr. Dion, at the time and place charged, hindered a law enforcement officer while the law enforcement officer was acting under the authority of the State, and that Mr. Dion knew or reasonably should have known that the person was a law enforcement officer acting under the authority of the state, and knew or reasonably should have known that his, Mr. Dion's, conduct would hinder the officer.

The trial judge then went on to give the dictionary definition of the term "hinder":

Means to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress. '

Defendant was convicted by the jury and was sentenced to an underlying prison term of six to twelve months, all suspended except for 15 days. The trial judge also sentenced defendant to perform twenty-five hours of community service and to pay a fine of $200 or, alternatively, to donate $100 to a fish and game organization. Finally, defendant was ordered not to contact or harass the Warden.

■ Defendant's first argument is based on the jury charge. He contends that the trial court erred in failing to instruct the jury that they could convict only if he had no legal right to hinder the officer, because this omission left out an essential element of the offense.

Although defendant was aware of the issue from the charge conference, and was afforded the opportunity to object after the charge, he failed to do so. V.R.Cr.P. 30 provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict." Since defendant did not object to the jury instruction, he failed to preserve this issue, unless it rises to the level of plain error. See V.R.Cr.P. 52(b); *State v. Ross*, 152 Vt. 462, 468, 568 A.2d 335, 339 (1989). This rule applies even where the charge omits an essential element of the offense. See *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989). Under the plain error standard, a conviction will be overturned only in rare and extraordinary cases where the error in the trial court's charge so affects the substantial rights of the defendant that it would be unjust to ignore it. *Id.*

Defendant's position is correct: illegal interference is an element of the crime. As we recently stated:

> "We regard the test as being one of whether or not the respondent has a legal right to take the action which results in impeding the officer. If he does have that right, its exercise is not prohibited by the statute. Only when he has no such right can his actions be an unlawful hindrance."

*State v. Harris*, 152 Vt. 507, 508–09, 568 A.2d 360, 360–61 (1989) (quoting *State v. Buck*, 139 Vt. 310, 313, 428 A.2d 1090, 1093 (1981)). Although an element was omitted, we cannot find plain error. As we noted in *Roy*: "'An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Roy*, 151 Vt. at 23, 557 A.2d at 888 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

■ The defense here was that defendant did not make the threats attributed to him and did not pull the boy from the Warden. The court charged that the jury had to find that defendant

threatened the Warden and that those threats hindered the Warden in processing the boy for a fish and game violation. The court emphasized that "mere questioning or mere argument" would not be enough. In view of the charge, we fail to see how defendant was prejudiced by the omission of the legal right element. While defendant argues that he defended based on his right to question the Warden, he does not claim that he had a right to threaten the Warden with physical violence to prevent him from processing the boy for a fish and game violation. Yet, the charge, read as a whole, clearly required the jury to find defendant made such a threat. There is no plain error.

Defendant next argues that the evidence was insufficient to convict him, especially since he asserts that he had a legal, if not constitutional, right to engage in the conduct for which he was convicted. Defendant has also failed to preserve this issue. In order to preserve a claim of insufficiency of the evidence, defendant must make a motion in the trial court for judgment of acquittal under V.R.Cr.P. 29(a) at the close of the evidence. See *State v. Norton*, 139 Vt. 532, 534, 431 A.2d 1244, 1245 (1981). Here, defendant failed to move for acquittal either at the close of the State's case or at the close of all of the evidence.

As with the first issue, we can reverse on a finding of plain error. See *State v. Cole*, 150 Vt. 453, 455, 554 A.2d 253, 254 (1988). We cannot find plain error here. The testimony of the two wardens was sufficient to establish that defendant hindered the Deputy Warden. Defendant's arguments to the contrary represent an attempt to subvert this testimony because it grounds defendant's conviction on speech protected by the First Amendment. See *City of Houston v. Hill*, 482 U.S. 451, 458–66 (1987). This argument is itself raised for the first time on appeal.[3] It ignores that the evidence in this case showed that

---

[3] Defendant never attacked the statute as overbroad or vague in the trial court and never attempted to exclude evidence of protected speech or obtain an instruction requiring the jury to exclude such speech. Thus, the constitutional issue is waived. See, e.g., *City of Grand Forks v. Cameron*, 435

defendant physically interfered with the Warden's action and used "fighting words." See *id.* at 465 (ordinance prohibits speech beyond "fighting words"); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942) (fighting words by themselves inflict injury or tend to incite an immediate breach of the peace); *State v. Krawsky,* 426 N.W.2d 875, 877 (Minn. 1988) (statute that prohibits fighting words and physical obstruction is valid).

*Affirmed.*

---

N.W.2d 700, 702 (N.D. 1989) (*City of Houston v. Hill* issue waived by failure to attack ordinance in trial court).