NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 139

No. 2018-244

In re M.C., Juvenile

Supreme Court

On Appeal from
Superior Court, Chittenden Unit,
Family Division

December Term, 2018

Alison S. Arms, J.

Matthew Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for
 Appellant.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Jody A. Racht, Assistant Attorney
 General, Waterbury, for Appellee.

PRESENT:  Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Grearson, Supr. J.,
                       Specially Assigned

¶ 1.     **EATON, J.**    In this appeal, we construe 33 V.S.A. § 5926, which provides neglected or unmanageable children subject to the Interstate Compact on the Placement of Children the right to a hearing before being placed out-of-state.  The trial court concluded that only juveniles whose parents' rights had not yet been terminated were entitled to a hearing under § 5926.  Because M.C. did not fall within this group, the court denied his request for a hearing.  M.C. appeals, arguing that this interpretation violates his state and federal constitutional rights, the remedy for which is to afford all children the right to a hearing under § 5926.  The State agrees that M.C. is entitled to a hearing pursuant to § 5926.

¶ 2.    We do not reach M.C.'s constitutional argument because we agree with the State that the plain language of § 5926 affords all neglected and unmanageable children the right to a hearing before being placed out of state. We therefore reverse the trial court's decision and remand for a hearing under § 5926. We also grant the State's unopposed request to preserve the status quo during the remand proceedings. Unless otherwise ordered, M.C. will remain in his current out-of-state placement pending the trial court's decision on remand.

¶ 3.    The facts are undisputed. M.C. was taken into the custody of the Department for Children and Families (DCF) in 2014 when he was six years old. He was adjudicated as a child in need of care or supervision. In January 2018, M.C.'s parents voluntarily relinquished their parental rights in him. DCF has custody of M.C.

¶ 4.    In February 2018, DCF sought to place M.C. in an out-of-state residential facility. M.C.'s attorney did not support the placement. A DCF caseworker subsequently moved for an emergency hearing on the proposed placement. M.C.'s attorney questioned the caseworker's authority to seek such relief; she requested a hearing under 33 V.S.A. § 5926.

¶ 5.    Section 5926 is part of the Vermont-specific provisions relating to the Interstate Compact on the Placement of Children. It provides:

> The officers and agencies of this State having authority to place neglected or unmanageable children may place such a child in another state. However, unless parental rights have been judicially terminated any such child being placed in another state pursuant to this compact shall, upon request, be given a court hearing on notice to the parent or guardian with opportunity to be heard prior to his or her being sent to such other state for care and the court finds that:
>
> (1) equivalent facilities for the child are not available in this State;
>
> (2) care in the other state is in the best interest of the child and will not produce undue hardship.

Id. § 5926.

¶ 6.     Following a preliminary hearing, the court concluded on the record that M.C. had a right to a hearing under this statute.  The court reconsidered its decision the following day.  It determined that M.C. was not entitled to a hearing because his parents' rights had been judicially terminated.  M.C.'s attorney moved for reconsideration, challenging the constitutionality of the statute.  The State did not respond to M.C.'s motion, even though it had notice of the motion and the Office of the Attorney General was separately notified of a constitutional challenge to the statute.*

¶ 7.     The court denied the motion for reconsideration in a written order.  With respect to M.C.'s constitutional argument, the court concluded that the statute was designed to protect the liberty interest of natural parents in the care and custody of their children.  It determined that M.C., as a minor, had no right to determine his residence, and thus, he was not entitled to the process that he claimed was due.  M.C. appealed.

¶ 8.     As indicated above, we find it unnecessary to address M.C.'s constitutional challenge because we conclude that M.C. is entitled to a hearing under the statute.

¶ 9.     We review the court's interpretation of § 5926 de novo.  State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129 ("The interpretation of a statute is a question of law that we review de novo.").  "Where the Legislature's intent can be ascertained from the plain meaning of the statute, we interpret the statute according to the words the Legislature used."  Herald Ass'n v. Dean, 174 Vt. 350, 354, 816 A.2d 469, 474 (2002).  We construe statutes "to avoid constitutional difficulties, if possible," In re G.T., 170 Vt. 507, 517, 758 A.2d 301, 309 (2000), mindful that courts should "not decide constitutional questions unnecessarily."  In re Picket Fence Preview, 173 Vt. 369, 375, 795 A.2d 1242, 1247 (2002).  "[I]f we can construe the statute in a manner that meets

_____

*     The State indicates in its brief that it did not respond because it did not object to the ultimate relief sought by M.C.  Certainly, the better practice would have been for the State to inform the trial court of its position.

3

constitutional requirements, we will do so unless the statute's plain language precludes it." Glidden v. Conley, 2003 VT 12, ¶ 11, 175 Vt. 111, 820 A.2d 197.

¶ 10.　At the outset, we acknowledge that § 5926 is not a model of clarity. See In re A.K., 153 Vt. 462, 465, 571 A.2d 75, 77 (1990) (recognizing "imprecise draftsmanship" in language above, codified at that time at 33 V.S.A. § 3206). As M.C. observes, the particular sentence at issue here is ninety words long and contains multiple dependent and independent clauses. Nonetheless, construing this provision "liberally . . . to effectuate the purposes" of the Interstate Compact on the Placement of Children, 33 V.S.A. § 5910, we conclude that the law reflects the Legislature's intent that all children have the right to a hearing before being placed out of state.

¶ 11.　As we recognized in A.K., the statute provides children—not parents—the right to request a hearing regarding an out-of-state placement. Id. at 464, 571 A.2d at 77. If a child requests a hearing, his or her parents must be provided notice and an opportunity to be heard. 33 V.S.A. § 5926; see also A.K., 153 Vt. at 464, 571 A.2d at 77. We read the awkward phrasing in § 5926 to recognize that no such notice to the parents and opportunity to be heard is required when "parental rights have been judicially terminated." This interpretation is consistent with DCF's longstanding interpretation of this provision. It also promotes the purposes of the Interstate Compact on the Placement of Children. Requiring the court to make specific findings before placing a child out of state ensures that each child requiring placement receives "the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care." 33 V.S.A. § 5901(1). It ensures a complete and thorough evaluation of the placement request. See id. § 5901(3) (explaining that compact seeks to ensure that "proper authorities of the state from which the placement is made may obtain the most complete information on the basis on which to evaluate a projected placement before it is made").

4

¶ 12. Our interpretation of § 5926 also harmonizes the statutory scheme and avoids absurd results. See State v. Blake, 2017 VT 68, ¶¶ 8-9, __ Vt. __, 174 A.3d 126 (explaining that in interpreting statutes, Court must consider statute's "purpose, effects and consequences," and "[t]o that end, laws relating to a particular subject should be construed together and in harmony if possible" (quotations omitted)); Judicial Watch, Inc. v. State, 2005 VT 108, ¶ 16, 179 Vt. 214, 892 A.2d 191 (explaining that statutes should not be interpreted to produce "absurd or illogical" results (quotation omitted)). As DCF notes, under the Interstate Compact on the Placement of Children, delinquent children are provided the right to a hearing when DCF seeks to place them out-of-state. See 33 V.S.A. § 5906. A delinquent child's right to a hearing is not dependent on whether his or her parents' rights have been terminated under 33 V.S.A. § 5232(b)(5). It would be absurd to allow a hearing for some children but not others based solely on their parentage status. This is particularly true given that the hearing right belongs to children, not their parents. We conclude that delinquent, neglected, and unmanageable children in DCF custody all share the same right to a hearing before being placed out of state. We thus hold that M.C. is entitled to a hearing under the plain language of § 5926, and we reverse and remand for additional proceedings.

Reversed and remanded for additional proceedings consistent with this opinion. Unless otherwise ordered, M.C. will remain in his current out-of-state placement pending the trial court's decision on remand.

FOR THE COURT:

_____
Associate Justice

5