NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 65

No. 2018-180

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Stephanie Berard | February Term, 2019 |

David A. Howard, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson and Carroll, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.    **REIBER, C.J.**  Defendant Stephanie Berard appeals the trial court's denial of her motion for judgment of acquittal following her conviction for impeding or hindering a police officer. We reverse and vacate defendant's conviction.

## I. Facts

¶ 2.    The State presented the following evidence at trial. On July 14, 2016, Trooper Wayne Godfrey with the Vermont State Police directed defendant to pull over her car after he observed her committing traffic violations. Defendant pulled into a store parking lot, opened her door, and began to get out. The officer told defendant to get back in her car, which she eventually did.

¶ 3.    Trooper Godfrey then approached defendant on the driver's side of the car. Defendant asked him to call another officer because she recognized him as someone she had interacted with on a previous occasion, when he "maced" her.  The officer instructed defendant to provide him with her driver's license, registration, and proof of insurance.  Defendant replied that she had the requested documents in her car, but she would not provide them to him and asked him to call another officer.  Trooper Godfrey continued to instruct defendant to provide the documents, and defendant refused to provide them to him.  During their exchange, Trooper Godfrey called for another officer.  Their exchange—the officer's requesting the documents and defendant's refusing to provide them—proceeded for around six minutes, until the second officer arrived.  Trooper Godfrey estimated at trial that he asked for defendant's information around twenty-two times within those six minutes and said her delay in producing the documents was unreasonable.  As Trooper Godfrey testified and the video shows, defendant was "[c]ombative" and "uncooperative" and her voice was "escalated and raised."  Trooper Godfrey recalled at trial that there had been an earlier encounter between them.

¶ 4.    When the second officer arrived, defendant retrieved the documents and extended them out of the car.  At that point, Trooper Godfrey grabbed defendant's arm and physically pulled her out of the car.  He arrested defendant for impeding a law enforcement officer in violation of 13 V.S.A. § 3001(a).

¶ 5.    In February 2018, defendant was found guilty following a jury trial.  She filed a motion for judgment of acquittal pursuant to Vermont Rule of Criminal Procedure 29(c).  The trial court denied the motion.  The court reasoned that defendant had no legal right to refuse to provide the documents, and it had no basis to disturb the jury's conclusion that defendant's refusal hindered the officer.  The trial court sentenced defendant to pay a $400 fine, observing that "the penalty here, in large part, is the felony conviction."  Defendant timely appealed.

¶ 6. On appeal, defendant makes three arguments: the State did not prove that defendant's refusal to provide the documents was itself a criminal act; defendant did not hinder the officer in investigating the alleged traffic infractions; and extending criminal liability to failure to provide a driver's license, registration, and proof of insurance would render the impeding-officer statute unconstitutionally vague. The State responds that defendant had no legal right to refuse to provide her documents, and the refusal need not have been a criminal act in order to constitute a violation of the impeding-officer statute; defendant's actions did hinder the officer in the exercise of his lawful authority; and the trial court did not commit plain error in failing to find that the impeding-officer statute was unconstitutionally vague as applied to this situation.

¶ 7. We review the denial of a judgment of acquittal de novo. State v. Ellis, 2009 VT 74, ¶ 21, 186 Vt. 232, 979 A.2d 1023. We consider "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." Id. (quotation omitted). "Judgment of acquittal is appropriate only if the State has failed to put forth any evidence to substantiate a jury verdict." Id. (quotation omitted). We review statutory interpretation without deference to the trial court. Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893 ("Issues of statutory interpretation are subject to de novo review.").

## II. Analysis

¶ 8. Defendant was convicted of violating 13 V.S.A. § 3001(a), which provides: "A person who hinders [a] . . . law enforcement . . . officer acting under the authority of this State . . . shall be imprisoned not more than three years or fined not more than $500.00, or both." Violation of § 3001 is a felony. Id. § 1 (defining felony as any offense with at least two-year maximum imprisonment).

¶ 9. "A person 'hinders' an officer when the person's actions illegally interfere with the officer's ability to perform duties within the scope of the officer's authority." State v. Harris, 152

3

Vt. 507, 509, 568 A.2d 360, 361 (1989); see also State v. Stone, 170 Vt. 496, 499, 756 A.2d 785, 788 (2000) ("We have defined 'hinder' as 'to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress.' " (citation omitted)). In prior impeding-officer cases, the unlawful hindering action was a substantial interference. See State v. Neisner, 2010 VT 112, ¶ 21, 189 Vt. 160, 16 A.3d 597 (upholding impeding-officer conviction where defendant's actions "significantly impeded" officer); State v. Oren, 162 Vt. 331, 336, 647 A.2d 1009, 1012 (1994) (holding that when defendant blocked officer's vehicle with her car, ran toward officer's car while shouting obscenities, tried to grab officer's badge, and pounded on officer's car, resulting in officer's inability to leave until local police arrived to help half an hour later, she "far exceeded a reasonable response to the circumstances" and violated impeding-officer statute); State v. Dion, 154 Vt. 420, 425, 578 A.2d 101, 104 (1990), overruled on other grounds by State v. Brooks, 163 Vt. 245, 658 A.2d 22 (1995) (upholding impeding-officer conviction where defendant threatened game warden and pulled boy that warden was attempting to arrest from officer's grasp).

¶ 10.    According to our prior holdings, a defendant violates § 3001 if the defendant (1) takes an action that the defendant has no legal right to do and (2) that action actually results in impeding an officer in the lawful execution of the officer's duties. Neisner, 2010 VT 112, ¶ 14 (noting that "impeding charge requires an unlawful act that actually hinders the officer in an investigation"). This test was first established in State v. Buck, in which we stated: "We regard the test [for whether the defendant violated § 3001] as being one of whether or not the [defendant] has a legal right to take the action which results in impeding the officer." 139 Vt. 310, 313, 428 A.2d 1090, 1093 (1981). We have repeatedly affirmed this test as the proper analysis under § 3001. See, e.g., Neisner, 2010 VT 112, ¶ 13 (reiterating Buck test as quoted in Stone, 170 Vt. at 500, 756 A.2d at 788); Dion, 154 Vt. at 424, 578 A.2d at 103 (affirming Buck test as quoted in Harris, 152 Vt. at 508-09, 568 A.2d at 360-61).

4

¶ 11.    There is no question that defendant's refusal was unlawful.  Under 23 V.S.A. § 1012(b), a driver must produce his or her driver's license and registration upon the request of an enforcement officer during a valid traffic stop.  And 23 V.S.A. § 800(c) requires that a driver must also provide proof of valid car insurance.  Thus, defendant was legally required to provide her documents upon the officer's request.

¶ 12.    However, we do not conclude that defendant's refusal—which essentially was an intentional civil violation—may, without more, constitute a violation of § 3001.  We base our determination on the statutory language and principles of statutory construction.  "In construing a statute, our paramount goal is to discern and implement the intent of the Legislature."  Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273, 882 A.2d 1196.  "To determine that intent, we must examine and consider fairly, not just isolated sentences or phrases, but the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system."  Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 20, 194 Vt. 12, 72 A.3d 346 (quotation omitted).  "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language."  Flint v. Dep't of Labor, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080.  "Conversely, if the statute is ambiguous, we ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law."  Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.).  In interpreting a criminal statute, we keep in mind that the criminal law is intended to create a coherent structure of offense and penalty consistent with ordinary standards of interpretation possessed by any reasonable person.  See State v. Cantrell, 151 Vt. 130, 133, 558 A.2d 639, 641 (1989) (affirming that criminal statutes must "define a criminal offense with

5

sufficient certainty so as to inform a person of ordinary intelligence of conduct which is proscribed, and such that arbitrary and discriminatory enforcement is not encouraged.").[1]

¶ 13. When read broadly, the impeding-officer statute appears to criminalize any unlawful action, no matter how slight or brief, that for any moment delays or interferes with the lawful execution of an officer's duties. For example, according to this broad reading, defendant here would have been guilty of impeding the officer if she had refused to provide her documents and then immediately recognized her error and produced them. Such a broad sweep is inconsistent with the text of § 3001 as a whole. Section 3001(a) states the following in full:

> A person who hinders an executive, judicial, law enforcement, civil, or military officer acting under the authority of this State or any subdivision thereof, or who removes a weapon from the person of a law enforcement officer, or who deprives a law enforcement officer of the use of a weapon, shall be imprisoned not more than three years or fined not more than $500.00, or both. For purposes of this section, law enforcement officer is defined under section 3019 of this title.

Placed in context, "[a] person who hinders [a] . . . law enforcement . . . officer" describes a level of interference akin to removing or disabling the use of an officer's weapon. See Brown, 2013 VT 38, ¶ 20 (affirming that we do not interpret "just isolated sentences or phrases," but rather construe

---

[1] The dissent argues that we fail to adhere to our principles of statutory construction. But it is consistent with those principles to consider the plain language of a statute "in the context and structure of the statute as a whole," rather than "in isolation." In re Vt. Verde Antique Int'l, Inc., 174 Vt. 208, 211-12, 811 A.2d 181, 184 (2002); see also State v. Charette, 2018 VT 48, ¶ 7, 207 Vt. 372, 189 A.3d 67 (rejecting defendant's statutory interpretation because it was "not compelled by the plain language of the statute" and noting that "[e]ven if this construction might make sense when viewing the relevant . . . language in isolation, it does not make sense in the context of the statute as a whole"); In re Judy Ann's Inc., 143 Vt. 228, 231, 464 A.2d 752, 754 (1983) ("When a statute is unambiguous and susceptible of only one interpretation, we will enforce it as the legislature deliberately framed it. However, we will not excerpt a word or phrase and follow what purports to be a literal reading without considering the entire statutory scheme." (citation omitted)). Additionally, it is always appropriate to focus on legislative intent in statutory interpretation, including when applying plain-language analysis. See Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) (explaining plain-meaning rule, "like all other rules of statutory construction, . . . is no more than an aid in our efforts to determine legislative intent," and affirming that "[u]nderlying all other rules of construction is the fundamental rule that we must ascertain and give effect to the true intent of the legislature").

statute as whole); see also In re Hamid-Ahmed, 2018 VT 113, ¶ 7, __ Vt. __, 200 A.3d 179 (stating that we interpret statutes "based on the plain meaning of the language when read in context of the text as a whole"). When paired with offenses related to an officer's weapon, it does not follow that the Legislature intended § 3001 to penalize a civil violation of the motor vehicle code as a felony offense.

¶ 14. The prescribed penalty for impeding an officer, when compared with the prescribed penalties for similar offenses in the same chapter, further support this view. Impeding an officer carries a felony conviction and a maximum penalty of three years' imprisonment. 13 V.S.A. § 1 (defining felony and misdemeanor); id. § 3001(a). In contrast, the first instance of resisting arrest is a misdemeanor, punishable by up to one year in prison. Id. § 3017(a)(1). The second instance of resisting arrest is a felony punishable by up to two years in prison. Id. § 3017(a)(2). The same is true for hindering the arrest of another. Id. § 3018 (prescribing one year's imprisonment for first offense and two years for second offense). Similarly, impersonating an officer carries a six-month maximum prison term for the first offense and a two-year maximum term for the second offense. Id. § 3002. Given these lesser penalties for a comparable or lesser offense, we cannot conclude that the Legislature intended § 3001 to include a civil violation of the motor vehicle code as a hindering action.

¶ 15. The penalties prescribed in the motor vehicle code for failing to provide a driver's license, registration, and proof of insurance also support our interpretation. The motor vehicle code established the lawful basis for Trooper Godfrey's order to produce defendant's documents. According to the motor vehicle statutes, the failure to produce a driver's license and registration carries a civil penalty of up to $250. 23 V.S.A. § 1012(d). The failure to produce proof of car insurance carries a civil penalty of up to $100. Id. § 800(d). Thus, as a traffic violation, the maximum penalty would have been $350. This is dramatically different from the three years' imprisonment authorized by the impeding-officer statute. The disparity calls into question a broad

7

interpretation of § 3001, which would put discretion into the hands of law enforcement officers and prosecutors to render a civil violation a felony.

¶ 16. A broad sweep that criminalizes a civil violation of the motor vehicle code as a felony may also raise constitutional concerns. "We generally construe statutes to avoid constitutional difficulties, if possible." State v. Hurley, 2015 VT 46, ¶ 16, 198 Vt. 552, 117 A.3d 433 (quotation omitted). The United States Supreme Court has held that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). One important element of this doctrine is "the requirement that a legislature establish minimal guidelines to govern law enforcement." Id. at 358 (quotation omitted). Otherwise, "a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." Id. (quotation omitted); see also Cantrell, 151 Vt. at 133, 558 A.2d at 641 ("The doctrine of void-for-vagueness, generally stated, requires that penal statutes define a criminal offense with sufficient certainty so as to inform a person of ordinary intelligence of conduct which is proscribed, and such that arbitrary and discriminatory enforcement is not encouraged.").

¶ 17. Accordingly, we interpret § 3001 narrowly and hold that a civil violation of the motor vehicle code, on its own, may not provide the basis for an impeding-officer offense, even when that violation is intentional. This interpretation is consistent with the plain language of § 3001 taken as a whole, as well as the surrounding statutory scheme and the motor vehicle statutes. This narrow interpretation is necessary to avoid constitutional concerns. See In re M.C., 2018 VT 139, ¶ 9, __ Vt. __, 204 A.3d 1123 ("We construe statutes to avoid constitutional difficulties, if possible, mindful that courts should not decide constitutional questions

8

unnecessarily." (quotations omitted)).  This is not the first time we have viewed a narrow construction necessary in order to preserve § 3001 from being unconstitutionally vague:

> If the statute is not given a narrow reading, it will be unconstitutionally vague. . . .  [I]f the statute is read broadly, conduct routinely engaged in by many citizens of this state would potentially be prohibited. . . .  Read broadly, the statute would not convey sufficiently definite warning as to the proscribed conduct.

Harris, 152 Vt. at 509 (quotation and alteration omitted).  Moreover, we consider this interpretation appropriate because "the rule of lenity requires that any doubts created by ambiguous legislation be resolved in favor of the defendant."  State v. Goodhue, 2003 VT 85, ¶ 21, 175 Vt. 457, 833 A.2d 861.  Because we reverse the trial court's decision on these grounds, we need not address defendant's other arguments.

The trial court's decision is reversed and defendant's conviction is vacated.

FOR THE COURT:

_____
Chief Justice


¶ 18.  **CARROLL, J., dissenting.**  The majority concedes that defendant had no legal right to refuse to provide her driver's license and registration to a police officer who pulled her over after having witnessed her commit three motor-vehicle-code violations.  Nonetheless the majority vacates defendant's conviction because it assumes that the Legislature did not intend that civil violations could provide the basis for impeding an officer.  The majority also speculates in concluding that lawmakers did not intend that a felony conviction would result from such an act of defiance.  I dissent and would affirm the jury's guilty verdict because 13 V.S.A. § 3001(a) is unambiguous and the facts, taken in the light most favorable to the State, establish each of the essential elements of hindering a law enforcement officer beyond a reasonable doubt.

¶ 19. It is important to supplement the majority's factual recitation to fully understand the context of the encounter. On appeal of the denial of a Rule 29 motion we must "tak[e] the evidence in the light most favorable to the State and exclud[e] modifying evidence" in assessing whether the State has "introduced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." Reporter's Notes, V.R.Cr.P. 29. The following facts are thus taken in the light most favorable to the State.

¶ 20. On a mid-summer evening, a trooper was on patrol for impaired drivers when he observed a vehicle perform an illegal turn onto Main Street in Bennington. The operator failed to stop at a stop sign before turning and then crossed the center yellow line while executing the turn. And, as the trooper drove to catch up to the offending driver, the operator failed to signal a turn into a parking lot. Viewing a third violation of the motor vehicle code, the trooper activated his emergency lights and parked his cruiser behind the vehicle in the parking lot.

¶ 21. The traffic stop then proceeded, in somewhat atypical fashion. Defendant attempted to exit her vehicle while the trooper was still inside his cruiser. She opened the door and began to get out. For safety reasons, the trooper admonished defendant to get back into her vehicle. As the trooper explained, officers are trained to dissuade people who might attempt to flee from apprehension or who might decide to confront or threaten an officer with a weapon.

¶ 22. As the majority acknowledges, after approaching the vehicle the trooper then repeatedly directed defendant to produce her license and registration and she repeatedly refused to do so. The officer testified that it is important to be able to review an operator's license and registration in the first moment of a traffic stop because if the operator chooses to flee the scene in an effort to evade police, the officer will know who was operating the vehicle. For this reason, an officer's goal, when conducting a traffic stop, is to immediately obtain as much information about the operator as possible. Throughout their encounter, defendant was combative and uncooperative

10

and had a raised voice.[2] She insisted that another officer be called to the scene before she would comply with the officer's request. Indeed, she did not comply with his request to produce her license and registration until after a second officer, who the trooper called in response to her demand, arrived at the scene.

¶ 23. I agree with the majority that defendant's refusal to provide the documents required by statute was unlawful because she had no legal right to refuse to comply with 23 V.S.A. § 1012(b) and that this "established the lawful basis for Trooper Godfrey's order to produce defendant's documents." Ante, ¶ 15. However, the majority does not then continue on to consider the other Neisner factor—whether this refusal hindered the officer's lawful execution of his duties. State v. Neisner, 2010 VT 112, ¶ 14, 189 Vt. 160, 16 A.3d 597. Instead the majority decides to "interpret § 3001 narrowly" after speculating on the Legislature's intent. Ante, ¶ 17. This is where I part ways with the majority.

¶ 24. Well-established principles of statutory interpretation state that we construe statutes according to their plain language because this is the best evidence of what the Legislature intended when it passed a law. State v. Thompson, 174 Vt. 172, 174-75, 807 A.2d 454, 458 (2002) ("When construing a statute, our paramount goal is to effectuate the intent of the Legislature. In determining legislative intent we look first at the plain meaning of the statutory language." (citation omitted)). Absent an ambiguity, the plain language of the statute controls. Id. ("We will enforce the statute without resorting to statutory construction if the legislative intent is clear from the language.").

---

[2] Defendant's confrontational demeanor during this interaction was manifest from the video recording and the content of her statements to the officer. Indeed, she said to the officer that he was "ridiculous," that he "shouldn't even be allowed to call [himself] an officer," that he "do[es] not know how to do [his] job," that he is a "racist, [and] biased," and she "do[es] not see [him] as an officer of the law. [He] might as well work at McDonald's." Even if her tone and conduct were at all ambiguous as to how they would accurately be characterized—in my view they are not—on appeal of a denial of a motion for judgment of acquittal we must take the facts in the light most favorable to the State. Reporter's Notes, V.R.Cr.P. 29,

¶ 25. Yet, the majority concludes that the Legislature did not intend that a civil violation could provide the basis for a violation of § 3001 and it also asserts that the Legislature did not intend for conduct like defendant's to be punished as a felony. The language of § 3001 is not ambiguous, however, and the majority does not conclude otherwise. This interpretive error in the "order of operations" for statutory interpretation colors the rest of the court's analysis. Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1988) (mem.) ("[W]here legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resort to statutory construction."); Flint v. Dept. of Labor, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080 ("[W]e resort to other tools of statutory construction—such as legislative history—only when the statute is unclear or ambiguous."). The majority sets these principles aside, does not conclude that § 3001 is ambiguous, and delves immediately into its understanding of legislative intent. By doing so it fails to enforce a statute according to its unambiguous terms.

¶ 26. I base my critique on the two primary methods of analysis by the majority. First, the majority narrowly interprets § 3001 because of a concern that doing otherwise would criminalize de minimis conduct. It explains that if it allows for prosecutions based upon civil violations, as in this case, "defendant here would have been guilty of impeding the officer if she had refused to provide her documents and then immediately recognized her error and produced them" and "[s]uch a broad sweep is inconsistent with the text of § 3001 as a whole." Ante, ¶ 13. I disagree with the use of this hypothetical for three reasons.

¶ 27. First, a defendant may not be convicted of a violation of § 3001 unless she actually impedes an officer in the lawful execution of his or her duties. The hypothetical posed by the majority clearly would not satisfy the impeding element of the statute since a momentary hesitation, without more, would not result in impeding the officer from performing his or her duties. Here, it is undisputed that defendant did not merely hesitate to comply with the law; she repeatedly refused to obey the law. Thus, the majority's analogy is inapt to the facts of this case.

¶ 28.   Second, § 3001 has already been interpreted sufficiently narrowly to satisfy any constitutional concern.   In State v. Harris, 152 Vt. 507, 509, 568 A.2d 360, 361 (1989), we recognized that if § 3001 is not given a narrow reading, it would be unconstitutionally vague and that "[a] criminal law must inform the public with reasonable assurance what behavior is forbidden."   In Harris, we were satisfied that, by limiting the hindering statute to encompass only actions that a person has no legal right to take, a person of reasonable intelligence would know what conduct violates the statute.   Id.   Here, a person of reasonable intelligence would know that repeatedly refusing a law enforcement officer's request for her license and registration following a traffic stop might subject her to criminal liability because providing one's license and registration upon request is required by statute.   State v. Woods, 107 Vt. 354, 356, 179 A. 1, 2 (1935) (holding that Vermonters are presumed to know the law both in civil and in criminal cases).   The majority here suggests that this is not enough to avoid a constitutional vagueness problem and thus holds that hindering does not encompass actions that a person has no legal right to take under the motor vehicle code.   Ante, ¶ 17.   Section 3001 is not unconstitutionally vague.   What is meant by unlawful is definitionally apparent: statutes establish what is unlawful.   The majority's new limitation is unnecessary to avoid a constitutional vagueness problem and its analogy has no effect on the constitutional analysis.[3]

---

[3]   It is unclear whether the majority's void-for-vagueness analysis stems from concern over notice to reasonable persons of what is prohibited, which I address above, supra ¶ 28, or whether the its primary concern is the potential for discriminatory enforcement.   See ante, ¶ 16-17 (describing notice and discriminatory enforcement aspects of void-for-vagueness doctrine and concluding that "[the majority's] interpretation is necessary to avoid constitutional concerns"). Unlike cases that rely heavily on discriminatory enforcement as a basis for concluding that a statute is unconstitutionally vague, here the majority has not referred to any facts in its analysis to suggest that § 3001 has indeed been enforced in a discriminatory fashion.   See Papachristou v. City of Jacksonville, 405 U.S. 156, 158-62 (1972) (holding "prowling by auto" statute unconstitutionally vague based upon lack of notice while highlighting fact that police officers claimed that "racial mixture in the car" played no role in arrest decision).   The majority also does not identify any constitutional rights implicated by a prohibition against impeding officers based on a violation of the motor-vehicle code.   See Kolender v. Lawson, 461 U.S. 352, 361 (1983) (holding statute requiring that pedestrians detained for Terry stop provide "credible and reliable identification"

¶ 29.   Finally, absent constitutional concerns, we must trust law enforcement officers and prosecutors to use reasonable discretion in making arrest and charging decisions.  The facts of this case, contrary to the majority's hypothetical, demonstrate a perfect example of a sound exercise of that discretion.  Here, the trooper was met with a combative and uncooperative operator who refused his repeated requests to comply with Vermont law and produce her license and registration.  Rightly or wrongly, he believed he had the authority to arrest defendant when she first rebuked him.  Yet he instead exercised restraint and continued making the request that she provide him with her documentation.  Only after the trooper made twenty-two requests of an unruly operator, summoned another officer to the scene at her request, and the second officer arrived, did defendant comply.  After that ordeal, the officer made the decision to arrest her for impeding.  The State's Attorney saw fit to prosecute the case.  Most importantly, a reasonable jury, deliberating on the facts of the case, ultimately decided that defendant hindered Trooper Godfrey.  I see no reason to more narrowly interpret this unambiguous statute and in so doing upset the jury's verdict.[4]

---

void for vagueness due to concern over potential suppression of both First Amendment liberties and constitutional right to freedom of movement).  And, even if I agreed with the majority's analysis—which I do not—to reach a definite conclusion on the constitutional question violates precedent because we do not decide constitutional issues unnecessarily.  See In re M.C., 2018 VT 139, ¶ 9, __ Vt. __, 2014 A.3d 1123.  The majority holds that the plain language of the statute does not encompass motor vehicle violations.  Ante, ¶ 17.  This obviates the need for constitutional analysis.  For these reasons, and because I believe that all involved in this case exercised discretion in a fashion that was within the bounds of reasonableness, infra ¶ 29, I strongly disagree with the majority's constitutional holding.

[4] I fear that the majority's holding could cause violators of the motor vehicle code to place increased demands on law enforcement.  Officers may have to choose between complying with an operator's demands and conducting an orderly traffic stop.  A responding officer, not an operator who has been pulled over, should determine if a backup officer is needed.  Vermont is a state with many sparsely populated areas and driving conditions are often challenging.  Frequently it will not be feasible for a second officer to respond wherever and whenever an operator might make such a demand.  Yet today the majority has effectively held that demanding that another officer respond to the scene to receive an operator's license and registration does not, as a matter of law, impede an officer in the performance of his or her duties if the only underlying unlawful act is a violation of the motor vehicle code.  As explained in the body of this dissent, I believe this is incorrect as a matter of law.  But I also fear that this is dangerous as a matter of policy because it places unwarranted logistical requirements on police officers.

14

¶ 30.    I also disagree with the majority's use of comparisons to the maximum punishments for other offenses in Title 13 to conclude that the Legislature could not have "intended § 3001 to include a civil violation of the motor vehicle code as a hindering action." Ante, ¶ 14. And I disagree with the majority's conclusion that the Legislature did not intend to "penalize a civil violation of the motor vehicle code as a felony offense." Ante, ¶ 13.

¶ 31.    These are far-reaching assumptions of the Legislature's intent. Yet § 3001 is unambiguous. It does not prohibit prosecutions based upon civil violations. Indeed, the majority cites no legislative history to buttress its apparent view that defendant's conduct was not intended by the Legislature to be a felony. Nor is there any citation for the proposition that when the Legislature passed § 3001 it viewed the penalty for the offense as unreasonable. Quite to the contrary, we must presume that the penalty for the offense—up to three years in prison and up to $500 in fines[5]—was thought to be reasonable by the Legislature that drafted, debated, voted on, and ultimately passed the bill that enacted § 3001 into law. The Legislature is free to amend the statute by either changing its scope or its penalties. It is not our role to do so. Yet the majority suggests that the Legislature, by passing other statutes with other penalties, has shed light on what was meant to be penalized when § 3001 was passed. Ante, ¶¶ 14-15. This logic is flawed.

¶ 32.    The Legislature determines the appropriate sentence and class for each individual crime. When a jury determines that a criminal violation has been proven beyond a reasonable doubt, the penalty in the statute applies and a defendant is convicted of a felony or misdemeanor. Here the jury decided that the elements of § 3001 were proven. Indeed, based on the facts, taken in the light most favorable to the State as we must on this appeal, the two prongs of Neisner have

_____

[5] Yet another example of a proper exercise of discretion was the trial court's sentencing order that defendant pay a $400 fine while noting that "the penalty here, in large part, is the felony conviction." Even setting aside the broad discretion afforded a sentencing court, I have no quarrel with that determination given the facts and circumstances of this case.

been met. Defendant had no legal right to refuse to provide her license and registration to the trooper and this impeded him in the lawful execution of his duties: she unjustifiably delayed him at this traffic stop while he repeatedly requested that defendant comply with 23 V.S.A. § 1012(b) and she forced him to summon and wait for another officer to arrive (who was then diverted from his own work). The Legislature, apparently mindful that it is imperative that Vermonters recognize and respect the authority of our law enforcement officers and obey their legal requests when failing to do so would be unlawful, chose to make impeding an officer in this manner a felony and has imposed a particular penalty. There is nothing ambiguous about this. I therefore would affirm defendant's conviction for impeding an officer and I dissent.

_____
Associate Justice