## State of Vermont v. Pamela Stone

[756 A.2d 785]

No. 98-075

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 12, 2000

*Robert M. Butterfield,* Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *Henry Hinton,* Appellate Attorney, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant Pamela Stone was convicted by a Caledonia District Court jury of hindering a police officer, in violation of 13 V.S.A. § 3001. Defendant appeals on the grounds that the evidence presented at trial was insufficient to support her conviction. We agree and reverse.

On September 19, 1998, a Vermont State Police officer received information that John Stone had failed to return from furlough and had been placed on escape status by the Vermont Department of Corrections. The officer had dealt with Mr. Stone before, knew where Stone lived, and drove his marked cruiser to Stone's home in St. Johnsbury. Finding no one at home, the officer left around 8:00 p.m. While on the road only minutes later, the officer came up behind a car he recognized as that of defendant Pamela Stone, Mr. Stone's wife. He followed the car as it pulled into the parking lot of a gas station in Lyndonville and proceeded into a dimly-lit section of the parking lot behind the station. The officer stopped and approached the car, determining with his flashlight that the car was occupied by defend-

ant in the driver's seat, John Stone in the front passenger's seat and an unknown male in the back seat. He also saw alcohol containers on the rear floor.

As the officer neared the driver's window, defendant asked if there was a problem. The officer replied that Mr. Stone was on escape status and directed the occupants of the vehicle to remain in it and to place their hands where they could be seen. Defendant complied with this order by putting her hands on the steering wheel and remaining in her seat.

Mr. Stone, however, did not comply. Instead, he began to yell and swear, generally acting out of control. The officer moved to the passenger side of the vehicle, repeatedly telling Mr. Stone that he was under arrest and to exit the car. Mr. Stone refused to comply, continuing his verbal torrent and locking his door. When the officer determined he could not enter, and after warning Mr. Stone of the consequences of noncompliance, he smashed the passenger window with his flashlight to gain access to the door lock.

When the officer shattered the window, defendant immediately got out of the car and walked towards the rear of the vehicle in a quick and determined manner. She was carrying an object that turned out to be her purse. The officer ordered her to return to the driver's seat, but she did not comply and continued walking. The officer then left the passenger side of the car and confronted defendant along the driver's side. He repeatedly ordered defendant to get back in the car until he had apprehended Mr. Stone, but she refused to comply and attempted to go either around or through the officer. After warning her, the officer then told defendant that she was under arrest, and he reached down to grab her wrist to handcuff her. That caused an altercation between the officer and Mr. Stone, who left the vehicle to come to the aid of his wife. A back-up officer arrived and took custody of defendant while the original officer arrested Mr. Stone.

Defendant was charged with and convicted by a jury of hindering the officer's arrest of Mr. Stone in violation of 13 V.S.A. § 3001. That statute provides that "[a] person who hinders an executive, judicial, law enforcement, civil or military officer acting under the authority of this state or any subdivision thereof shall be imprisoned not more than three years or fined not more than $500.00, or both."[1]

Defendant moved for a judgment of acquittal pursuant to V.R.Cr.P. 29(a), both at the close of the State's case and at the close of the

---

[1]Defendant was not charged with the narrower crime of hindering the arrest of another. See 13 V.S.A. § 3018.

evidence, arguing that the evidence was insufficient to sustain a conviction for hindering the officer's arrest of her husband. The trial court applied the standard for considering such a motion: whether the evidence viewed in a light most favorable to the State and excluding any modifying evidence, is sufficient to fairly and reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999). The court denied the motion, concluding:

> The state has shown evidence showing that she refused to stay behind the wheel as she had been ordered to do inside the car, that she exited the car when told not to, that she was told to reenter the car, and she persisted in refusing to reenter the car and in walking back, toward the back of the car, and confronting the officer, that she did physically interfere with his ability to attend to a very difficult, agitated and unruly person that the officer was taking into custody, so the motion is denied.

The court also noted that defendant "walked beside the car, not walking away from the car." Defendant argues anew in this Court that the evidence was insufficient to support her conviction.

Before we address the applicable law, we think it important to address the State's theory of hindering that is supported by the evidence. The evidence of defendant's conduct before her arrest came exclusively from the testimony of the officer.[2] The officer's testimony was that he confronted defendant when she was walking along the driver's side of the vehicle in the direction of the rear of the car. There was no indication that she intended to go around the rear of the car and physically interfere with the officer's arrest of John Stone. Indeed, the officer admitted her actions were equally consistent with an intent to leave the area of the car and go to the gasoline station.

---

[2] The dissent makes much of defendant's conduct after the officer confronted her, relying on trial court "findings" that defendant "confronted the officer" and "did physically interfere" with him. There are no trial court fact findings; the court was explaining why it found the evidence sufficient to support the charges. The court's characterization adds nothing to the testimony which is described in the text.

Apparently, the dissent wants to consider defendant's act of struggling with the officer during her arrest as hindering the arrest of her husband. She was not charged with resisting arrest, a charge that might have fit this conduct. In fact, she was not charged at all for this conduct — it is not contained in the officer's affidavit in support of the information, since it occurred after the officer announced he was placing the defendant under arrest for hindering the arrest of her husband. We fail to see how it adds to the charge for which she was arrested.

Consistent with these facts, the officer stated why he believed defendant had hindered his arrest of Mr. Stone:

> Ms. Stone, by getting out of her vehicle after I had essentially told her to stay in the vehicle, directly affected my ability to deal directly with John Stone in a safe and efficient manner, depending upon how he reacted. It affected my ability to be able to place him into custody without any other people getting involved, and by her getting out of the vehicle, she caused me fear for my safety.

He testified that his fear was caused:

> Because I hadn't searched her. I didn't know what her intentions were. She had something in her hands, later turned out that it was her purse and I hadn't gone through her purse, I had no idea what she was going to do.

Although all cases must be decided on their unique facts, we emphasize the limit of what those facts show. As the trial court found, if defendant hindered the arrest, it is because she left the car in contradiction of the officer's orders, and did not immediately proceed away from the car so it was clear she would not physically interfere with the arrest.[3]

We have defined "hinder" as "to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress." *State v. Oren*, 162 Vt. 331, 334, 647 A.2d 1009, 1011 (1994). In interpreting the statute, we have consistently added that the interference "must be action that a defendant does not have the legal right to take." *Id.* This requirement was first explained in *State v. Buck*, 139 Vt. 310, 313, 428 A.2d 1090, 1093 (1981), where the owner of a business was charged with hindering the actions of tax inspectors, who were examining records of defendant's business in a room where they were kept. After a dispute arose over the inspectors' action, defendant entered the room, removed the light bulb and placed seat pads against the

---

[3] The State has not relied upon defendant's verbal communications to the officer, and it is not clear what she said. The officer indicated that when he was trying to converse with Mr. Stone, defendant entered the conversation at times. He stated that the only thing she said when she exited the car was "Oh, you're crazy, or this is crazy, or something along those lines." Defendant never threatened the officer. There is no indication that she stated that she intended to walk around to the passenger side of the vehicle after she exited from it.

door after he left. In rejecting the State's claim that these actions hindered the activities of the inspectors, this Court held:

> We regard the test as being one of whether or not the respondent has a legal right to take the action which results in impeding the officer. If he does have that right, its exercise is not prohibited by the statute. Only when he has no such right can his actions be an unlawful hindrance.

*Id.* We held that defendant had a right to remove his own property — that is, the light bulbs; and that the seat pads were a minor hindrance to leaving the room, but not to the tax inspection. *Id.* at 314, 428 A.2d at 1093.

We have explored the absence of legal right element of the offense in some later cases. In *Oren*, 162 Vt. at 335, 647 A.2d at 1012, and *State v. Dion*, 154 Vt. 420, 424, 578 A.2d 101, 103 (1990), we found absence of a legal right because defendant was charged with threatening a law enforcement officer to prevent the officer from discharging a duty. For example, in *Oren*, defendant threatened a deputy sheriff to prevent the deputy from serving civil process on her. See *Oren*, 162 Vt. at 335, 647 A.2d at 1012. By comparison, in a case where defendant was charged with hindering the police by flushing cocaine in his possession down the toilet, we held that defendant had a legal right to do so, noting that although cocaine possession was a crime, dispossession was not unless the defendant sold or dispensed it. *State v. Harris*, 152 Vt. 507, 509, 568 A.2d 360, 361 (1989).

Here, defendant claims the State presented insufficient evidence that her actions were unlawful, because she had a legal right to exit the car and walk away. The State responds that her actions were unlawful because defendant did not have a legal right to ignore the officer's order to return to her seat in the car.

Whether defendant's conduct here is more like threatening an officer, or more like turning off the lights and shutting the door on tax inspectors, we cannot conclude that her failure to obey an officer's command automatically makes her guilty of hindering the officer. Although we have never addressed this question, we find decisions from other jurisdictions persuasive.[4] See, e.g., *District of Columbia v.*

---

[4] Virtually all states and many municipalities have established a crime similar to that in § 3001. The exact wording varies. While the operative word in 13 V.S.A. § 3001 is "hinder," statutes and ordinances elsewhere use verbs, such as "obstruct," "interfere," "impede," or "resist." We note that the decisions tend to ignore any potential differences in language, and treat the statutes and ordinances as roughly equivalent.

*Little*, 339 U.S. 1, 5-6 (1950) (defendant's refusal to unlock door of home for health inspector did not constitute inference with officer); *Coley v. State*, 344 S.E.2d 490, 491 (Ga. Ct. App. 1986) (failure to respond to officer's orders to move away from truck, and then to stop walking, did not support conviction for obstructing officer); *City of Warren v. Stringer*, 1983 WL 6090, at *1 (Ohio Ct. App. 1983) (failure of automobile passenger to remove his hands from under seat when ordered to do so by police officer, during arrest of driver, is not obstructing action of officer); *City of Columbus v. Waterman*, 322 N.E.2d 291, 294-95 (Ohio Ct. App. 1974) (failure of defendant to leave area where police were conducting an arrest, when directed by police, insufficient to support crime of hindering the officer); *State v. Mendez*, 970 P.2d 722, 730 (Wash. 1999) (failure to heed order to return to car during traffic stop did not support conviction for obstructing officer). If disobeying an officer were, in and of itself, sufficient to make out the crime of hindering, a police officer could transform inoffensive conduct into an act of hindering merely by giving an order, "convert-[ing] the character of an event from nonpunishable to punishable by proclamation alone." *State v. Manning*, 370 A.2d 499, 504 (N.J. Super. Ct. App. Div. 1977) (Antell, J., dissenting). Under this theory, the tax inspectors in *Buck* could have criminalized defendant's conduct by ordering him not to remove the light bulb.

We acknowledge that disobeying an officer's command is often part of the conduct that courts have held to constitute hindering, but find it significant that in many of those cases the defendant has engaged in other acts which would independently constitute hindering or some other crime. For example, in *Wilkerson v. State*, 556 So. 2d 453 (Fla. Dist. Ct. App. 1990), defendant was interfering with the arrest of a group of drug dealers by yelling and cursing at the officers and telling them they had no business there. Her actions attracted a crowd, and the officers directed her to leave, but she remained. The court upheld a conviction for obstruction of a law enforcement officer, concluding that defendant violated the law because she yelled at the officers and refused to obey the order to leave the area, and because her physical presence was obstructing the officer in the performance of his duty.

---

See Note, Types of Activity Encompassed by the Offense of Obstructing a Public Officer, 108 U. Pa. L. Rev. 388, 388-89 (1960). We also note, however, that some statutes and ordinances specifically address a citizen's obligation to respond to an order of a law enforcement officer. See *City of Portland v. Tuttle*, 668 P.2d 1197, 1198 (Or. 1983). We have no similar statute applicable in this context. Our closest equivalent is a statute requiring an operator to stop a motor vehicle when signaled to do so by a law enforcement officer. See 23 V.S.A. § 1133(a).

See *id.* at 456; see also *Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C. Cir. 1998) (Rogala arrested for "disobeying [officer's] order to return to the car after she had interfered with the field sobriety test that he was conducting"); *Reed v. State*, 422 S.E.2d 15, 17 (Ga. Ct. App. 1992) (officer in process of investigating defendant for driving under the influence when defendant walked inside house and disappeared, ignoring orders to stop); *Patterson v. State*, 381 S.E.2d 754, 755 (Ga. Ct. App. 1989) (after being stopped for speeding, driver exited car and refused order to reenter the car; driver was verbally abusive and stayed in dangerous spot in roadway); *State v. Little*, 806 P.2d 749, 751 (Wash. 1991) (conviction upheld where officer was investigating defendants for criminal trespass when they ignored orders to stop).

On this point, we emphasize that we are not determining whether the officer's direction was lawful or reasonable, or could result in the seizure of defendant. See, e.g., *People v. Gonzalez*, 704 N.E.2d 375, 382-83 (Ill. 1998) (officer could order passengers in stopped car to remain in car and could seize and frisk passenger who attempted to leave). Nor are we determining the constitutional significance of the officer's direction, specifically whether a seizure occurred because of the direction. See, e.g., *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) (police officer may order passengers of lawfully stopped car to exit vehicle without violating Fourth Amendment protections); *State v. Caron*, 155 Vt. 492, 500-01, 586 A.2d 1127, 1132 (1990) (although police officer's order to exit car was further seizure, it was limited detention not requiring probable cause). Cf. *Dennis v. State*, 693 A.2d 1150, 1152 (Md. 1997) (overturning conviction for disorderly conduct where passenger disobeyed command to remain in vehicle and walked away, because command was unconstitutional detention). Instead, the issue is whether the failure to follow the officer's command is, by itself, a crime. We hold that it is not.

We are left then with the question of whether defendant's walking to the rear of the vehicle, along the passenger side, and trying to go through or around the officer where he confronted her, constituted hindering the officer in his arrest of Mr. Stone. As the officer testified, there was nothing illegal about defendant exiting the vehicle and walking in the parking lot. There is no indication she was under arrest at the time at which she allegedly committed the crime. We believe that she had a right to walk away from the vehicle. While we understand that the case would be clearer if she had chosen to walk directly away from her door, rather than along the side of the car, we

cannot find that fact determinative. Because she had not yet reached the rear of the vehicle, there is no indication that she intended to physically interfere with the arrest of her husband. Her unwillingness to stop where the officer confronted her cannot be hindering if she had a right to go where he blocked her way.

As noted above, in a challenge to the sufficiency of the evidence, the standard on appeal is the same as that in the trial court. See *Couture*, 169 Vt. at 226, 734 A.2d at 527. Viewing the evidence in this case most favorably to the State, and excluding modifying evidence, we cannot say that the State has produced evidence fairly and reasonably tending to show beyond a reasonable doubt that defendant violated 13 V.S.A. § 3001 as charged.

*Reversed.*

**Amestoy, C.J.,** dissenting. In its haste to establish a rule that a law enforcement officer's order cannot be used to transform inoffensive conduct into an act of hindering, the majority transforms defendant's obstruction of an officer's lawful attempt to apprehend an escapee into a walk in the parking lot. I respectfully dissent.

Contrary to the majority's characterization, the issue in this case is *not* "whether the failure to follow the officer's command is, by itself, a crime." 170 Vt. at 502, 756 A.2d at 790. It is, instead, whether the evidence viewed in a light most favorable to the State and excluding any modifying evidence, is sufficient to fairly and reasonably support a finding beyond a reasonable doubt, see *State v. Sage*, 161 Vt. 633, 635, 641 A.2d 115, 116 (1994) (mem.), that defendant was guilty of hindering a law enforcement officer. As the majority accurately notes, we have defined "hinder" as "to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress." *State v. Oren*, 162 Vt. 331, 334, 647 A.2d 1009, 1009 (1994).

The officer's lawful objective was to apprehend defendant's husband, John Stone, who had been placed on escape status by the Vermont Department of Corrections. The evidence, when viewed in the light most favorable to the State, demonstrated that defendant engaged in the following acts when the officer sought to remove the escapee from defendant's automobile:

(1) Defendant left the automobile despite the officer's instruction that she remain in the car.

(2) Defendant refused to return to the car despite the officer's order that she do so.

(3) Defendant moved from the driver's side of the vehicle toward the rear of the car in a quick and determined manner carrying an object in her hand.[1]

(4) Defendant refused to return to her car despite the officer's warning that she would be arrested.

(5) Defendant advanced toward the officer and tried to get around him.

(6) As the officer attempted to arrest defendant, she tried to pull away from the officer's grasp.

The question of whether defendant's acts "made more difficult" the officer's progress toward accomplishing his objective of arresting the escapee is best answered by the officer's testimony of what next occurred:

[State's Attorney]: Now, at that point . . . when you went to grab her wrists, what was Mr. Stone doing?

[Officer]: When I reached for Mrs. Stone, Mr. Stone immediately got out of the passenger side of the car, and the situation that I feared could possibly happen began to unfold.

Q: Did he say or do anything when he got out of the car?

---

[1] The majority's statement that the officer testified that "there was nothing illegal about defendant exiting the vehicle and walking in the parking lot," 170 Vt. at 502, 756 A.2d at 790, paraphrases the officer's responses to defendant's cross-examination questions. As the officer explained shortly after, he did not believe that her actions were as legally innocuous as the majority represents:

[Defense Counsel]: And all she was doing was walking away from the car?
[Officer]: I didn't know what she was doing, I had no idea what her intent was, sir.
Q: Well, you knew that she was walking away from the car?
A: I knew that she was getting out of the car.
Q: And you saw her walking next to the car?
A: That's right.
Q: In a direction away from the car?
A: Back towards the rear of the vehicle.

A: Yes, he said words to the effect of, "Get your f-in' hands off my wife," or "Get your hands off my f-in' wife," or something to that effect.

Q: All right, and what did he do?

A: He got out of the passenger side of the car and just started marching towards me and Mrs. Stone, and at that time, she still was not in handcuffs . . . My attention now was going back and forth between Mrs. Stone who I'm trying to hold onto her wrists and she's trying to pull away from me. And I'm looking over, trying to watch the passenger side of the car and now Mr. Stone is . . . marching towards me and now I can see that there's going to be some type of a confrontation.

. . . .

Q: Now, what did you do at that juncture when he refused to return to the car?

A: While I was holding on to Mrs. Stone, I knew that she hadn't been searched, her pocketbook hadn't been searched. I didn't feel comfortable just cutting her loose because I didn't know what was going to happen when I turned my back to deal with him, so I reached down and pulled my sidearm out and brought it up. I was screaming at him to get back into the car, get back into the car and had the gun on him. And at that point, he continued advancing on my location, closing the distance, and he lifted his arms when he saw the gun, and he said, "Go ahead and f'in shoot me," and kept walking towards me and I was still holding on to Mrs. Stone at that point, and he continued to approach my location, and that's when a physical encounter occurred.

. . . .

Q: Now, up to this point in time, were there any other officers present at the scene?

A: No, I was still all alone.[2]

___

[2] The majority's assertion that the evidence of defendant's continuing confrontation with the officer adds nothing to the charge for which she was arrested ignores its relevance to the credibility of defendant's theory of the case. The actions of defendant

In its attempt to frame the issue of this case as solely one of disobedience to an officer's command, the majority not only modifies the State's evidence, it modifies the trial court's view of the evidence. The court did not, as the majority asserts, find only that "if defendant hindered the arrest, it is because she left in contradiction of the officer's orders, and did not immediately proceed away from the car . . . ." 170 Vt. at 499, 756 A.2d at 788. The court concluded that the State presented sufficient evidence of hindering a police officer because in addition to refusing to reenter the car in response to the officer's order, defendant "*confront[ed] the officer* . . . [and] *physically interfere[d]* with his ability to attend to a very difficult, agitated, and unruly person that the officer was taking into custody." (Emphasis added.)

Defendant's theory of the case was that she exited the car "to remove herself from harm's way." At trial, she argued her theory to the jury[3] and received an instruction that put her defenses squarely before it.[4] The majority might have returned a different verdict, but it cannot be seriously maintained that the jury lacked sufficient evidence upon which to conclude that defendant had hindered a law enforcement officer. The State argued that there was "actual, physical interference" by defendant, and it proved its case. While there may be much to be said about a rule of law that prohibits an officer from transforming inoffensive conduct into criminal conduct by mere disobedience of his order, it is not so compelling that it must be established before we have a case to which it can be properly applied.

The State's evidence of hindering far exceeded the mere failure to obey an officer's command. Defendant's acts exacerbated a dangerous situation. The ensuing confrontations between the escapee and the officer placed both the officer's and defendant's safety at risk. To say

---

were inconsistent with the explanation that she was innocently attempting to remove herself from the scene.

[3] In his closing argument, defense counsel argued:

You have a right in this country to get yourself out of a bad situation if you haven't done anything wrong. That's all she did, she got out of the . . .. car and was walking away. She had a right to do that. It may have made Officer Goodell's job more difficult, and we all agreed that a police officer's job is difficult . . . but she wasn't doing anything unlawful.

[4] The court's instruction included the following:

Finally, the State must prove that defendant had no legal right to hinder the officer. If defendant had a legal right to take the action she did, then she's not prohibited from doing so simply because it might make a law enforcement officer's duties more difficult.

that defendant's conduct hindered Sgt. Goodell's performance of his duty considerably understates the predicament of an officer faced with the obligation to arrest an escapee in the remote area of a darkened parking lot. Indeed, the scene was only secured when another officer arrived. Here, "[d]efendant's actions far exceeded a reasonable response to the circumstances, even had she reasonably perceived a threat to herself . . . when the [officer] first arrived." *Oren*, 162 Vt. at 336, 647 A.2d at 1012-13.

I dissent.