NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 13

No. 2019-320

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Joseph A. Blanchard | September Term, 2020 |

Timothy B. Tomasi, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Dawn Matthews, Appellate Defender, and
  Anders Newbury, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **ROBINSON, J.** Defendant appeals his convictions following a jury trial for criminal threatening under 13 V.S.A. § 1702 and impeding a public officer under 13 V.S.A. § 3001(a). He argues that there was insufficient evidence to support either conviction and that the jury instructions on impeding an officer were impermissibly vague and overbroad and failed to guarantee unanimity. We affirm.

¶ 2. The evidence presented at trial, viewed in the light most favorable to the State, was as follows. On a dark, rainy night in April 2018, Officer Neily pulled over the car defendant was driving after observing it traveling toward him with its passenger-side headlight out. When Officer Neily requested defendant's driver's license, registration, and insurance, defendant asked why

Officer Neily had stopped him. Officer Neily informed defendant that his headlight was out, and defendant thanked him and asked if Officer Neily suspected him of a crime. Officer Neily stated that defective equipment was a violation of the motor vehicle code. After some back and forth in which defendant asserted that there was no reason to stop him, defendant gave Officer Neily the requested documents. Upon reviewing the registration and insurance documents, Officer Neily noted that both were out-of-date, with the registration expiring in 2016. Officer Neily asked defendant if he could provide up-to-date documents. Defendant responded that he did not have to have registration or insurance and that it was his constitutional right to travel, and he asked to speak with Officer Neily's supervisor.

¶ 3. Officer Neily called his supervisor, Sergeant Molgano. Upon returning to his cruiser, Officer Neily confirmed that defendant's registration and insurance had expired. While Officer Neily was verifying the information, Sergeant Molgano arrived and began speaking with defendant, who was still in his car. After talking with defendant for nearly thirty-seven minutes, Sergeant Molgano returned to Officer Neily's vehicle, where the officers decided to inform defendant that they were going to ground his vehicle in the parking lot because of his defective equipment and outdated registration and insurance. Officer Neily returned to defendant's vehicle and told defendant that he was grounding the car in the parking lot where it was parked. Defendant argued with Officer Neily, asserting that he had a right to drive and stating, "I'm going to drive away." Officer Neily said if that happened, he would stop the car again and tow it, and defendant responded, "You're not going to tow my car, not without a fucking warrant, you aren't." At that point, Officer Neily said he would go ahead and tow the car. When Officer Neily returned to his vehicle, defendant got out of his car, standing with his back to the driver's-side door and his arms crossed.

¶ 4. When Officer Neily came back from his cruiser, he asked if defendant had a preference for who towed the car. Defendant stated multiple times that they could not tow his car

2

without a warrant and insisted, "You ain't taking my fucking car." Defendant said, at least twice, "I'm going to defend myself." When Officer Neily again turned to walk back towards the police cruiser, defendant, while pointing to the back seat of his car, said, "I've got an AR-15 right fucking here. Do we need that?"

¶ 5. Sergeant Molgano immediately stepped forward and approached defendant, engaging him in conversation. He did so, as he testified, "to get close to [defendant] so that he would not have the ability to get back into his car to attempt to get an AR-15." Sergeant Molgano testified that defendant did not appear to be joking and that he believed he was in jeopardy. After several more minutes of Sergeant Molgano telling defendant that he could not drive the car and defendant responding that he could and that he had not committed a crime, defendant attempted to open the driver's-side door to his car. Sergeant Molgano pushed the door closed before defendant could get back in. In this time, two other officers arrived at the scene. Defendant again attempted to open the door; Sergeant Molgano pushed the door shut and placed defendant under arrest for impeding an officer.

¶ 6. Defendant was charged with impeding an officer under 13 V.S.A. § 3001, two counts of criminal threatening—one for threatening each officer—under 13 V.S.A. § 1702(a), simple assault on a law enforcement officer under 13 V.S.A. § 1023(A)(3) and § 1028, and aggravated disorderly conduct under 13 V.S.A. § 1026(A)(1). The State dismissed the charge for aggravated disorderly conduct prior to trial.

¶ 7. At trial, both Officer Neily and Sergeant Molgano testified, and the officers' cruiser videos with audio of the entire interaction were admitted as evidence. After the close of evidence, defendant moved for judgment of acquittal under Vermont Rule of Criminal Procedure 29 based on insufficient evidence as to all charges. Specifically, defendant argued that he did not impede the officers from towing his vehicle or ensuring officer safety. As to the criminal threatening charges, defendant argued that there was insufficient evidence that the defendant's reference to his

3

gun amounted to a criminal threat. The court denied defendant's motion. The jury found defendant guilty of impeding Officer Neily and criminally threatening Sergeant Molgano.

¶ 8. Defendant argues again on appeal that the evidence was insufficient to support the conviction for criminal threatening, and challenges the jury instructions and sufficiency of the evidence with respect to the impeding charge. We address these arguments in turn.

## I. Criminal Threatening

¶ 9. Defendant argues that the evidence presented at trial was insufficient to support his conviction for criminal threatening. Specifically, defendant argues that his statements that he would defend himself and that he had an AR-15 in his vehicle do not rise to the level of "threatening" under the criminal threatening statute and were not constitutionally unprotected true threats. The State contends that defendant's words and actions constituted an "actual threat," and that defendant waived his constitutional argument by not raising it before the trial court. We reject the State's contention that defendant has not preserved the constitutional challenge because in this case the statutory and constitutional issues merge. On the merits, we conclude that there was sufficient evidence to support defendant's conviction for criminally threatening Sergeant Molgano.

¶ 10. Because of the structure of the criminal threatening statute, defendant's constitutional argument in this case is inextricable from his statutory argument. The criminal threatening statute provides, "A person shall not by words or conduct knowingly: (1) threaten another person; and (2) as a result of the threat, place the other person in reasonable apprehension of death or serious bodily injury." 13 V.S.A. § 1702(a). Section 1702 expressly excludes constitutionally protected activity from the definition of "[t]hreat" and "threaten." Id. § 1702(d)(2). The statute therefore can only punish constitutionally unprotected "true threats." See Hinkson v. Stevens, 2020 VT 69, ¶¶ 43-44, __ Vt. __, 239 A.3d 212 (concluding that statute only prohibits "true threats" in part because definition of "course of conduct," which encompasses

4

"threats," expressly excludes constitutionally protected activity); State v. Noll, 2018 VT 106, ¶¶ 28-29, 208 Vt. 474, 199 A.3d 1054 (same); cf. State v. Tracy, 2015 VT 111, ¶ 15, 200 Vt. 216, 130 A.3d 196 (analyzing "disorderly conduct by 'abusive . . . language' " statute against "backdrop" of First Amendment case law from U.S. Supreme Court); State v. Read, 165 Vt. 141, 146, 680 A.2d 944, 947 (1996) ("[T]his Court is obligated to narrow and limit the statute [punishing speech] in light of the protections guaranteed by the United States and Vermont constitutions."). Thus, in determining whether defendant's words and actions violated the statute, we must consider whether they are constitutionally protected. For that reason, in this case, defendant's broad objection before the trial court is sufficient to preserve his constitutional arguments.

¶ 11. On the merits, we conclude that defendant's statements did not fall outside the scope of the criminal threatening statute, construed in light of the applicable constitutional limitations. In particular, we conclude that defendant's statements amounted to "true threats" subject to prosecution under 13 V.S.A. § 1702, that they were not protected political hyperbole, and that our conclusion on this point is consistent with the cases defendant cites.

¶ 12. While the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech," this protection is not absolute. See U.S. Const. amends. I, XIV; Chaplinsky v. New Hampshire, 315 U.S. 568, 570-72 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem."). Among the limited classes of speech that states may ban consistent with the Constitution are "true threats." See Watts v. United States, 394 U.S. 705, 707-08 (1969) (per curiam) (recognizing that "[w]hat is a threat must be distinguished from what is constitutionally protected speech," and holding political hyperbole is not "true threat").

5

¶ 13.    The U.S. Supreme Court has said that true threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003).  However, the speaker need not actually intend to carry out the threat because the "prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur."  Id. at 359-60 (alteration omitted) (quotation omitted); see also Noll, 2018 VT 106, ¶ 36 (citing Black, 538 U.S. at 359).

¶ 14.    "We evaluate whether speech rises to the level of a true threat objectively—that is, whether an ordinary, reasonable person familiar with the context of the communication would interpret it as a threat of injury."  Noll, 2018 VT 106, ¶ 37 (quotation omitted).  In conducting this analysis, we must consider the context of the speech and the circumstances of the parties involved. Id. ¶ 38; see also State v. Miles, 2011 VT 6, ¶ 8, 189 Vt. 564, 15 A.3d 596 (mem.) ("[I]n determining whether statements are true threats of physical violence unprotected by First Amendment, courts must examine speech in light of entire factual context and consider several factors . . . ." (citing Doe v. Pulaski Cty. Special Sch. Dist., 306 F.3d 616, 622-24 (8th Cir. 2002) (en banc))).

¶ 15.    Defendant argues that his reference to his AR-15 was not a true threat because it was a statement of fact and a question rather than an "unequivocal, unconditional and specific expression[] of intention."  United States v. Kelner, 534 F.2d 1020, 1027 (2d Cir. 1976).  And he contends that the context of his interaction with the officers suggests a "general lack of tension" wherein the officers did not demonstrate "urgency or alarm."  We disagree both as to the relevant legal standard, and the significance of the State's evidence.

¶ 16.    With respect to the applicable law, this Court has rejected the argument that speech must be "unequivocal, unconditional, immediate and specific" to qualify as a true threat.  In Noll,

6

we approvingly cited a Second Circuit opinion for the proposition that "speech does <u>not</u> have to be 'unequivocal, unconditional, immediate and specific' to qualify as [a] true threat." 2018 VT 106, ¶ 39 (emphasis added) (quoting <u>United States v. Turner</u>, 720 F.3d 411, 424 (2d Cir. 2013)); see also <u>id</u>. ("[A] threat of violence does not need to be imminent so long as it conveys a gravity of purpose and likelihood of execution." (quoting <u>United States v. Dillard</u>, 795 F.3d 1191, 1200 (10th Cir. 2015))). And the United States Supreme Court has concluded that even a wordless demonstration that implicitly conveys a message of intimidation may fall outside the realm of constitutionally protected speech. See <u>Black</u>, 538 U.S. at 359-60. In particular, the Court recognized that, in some contexts, cross burning is a true threat designed to cause a person or group of people to fear bodily harm or death. <u>Id</u>.

¶ 17. On the evidence, we conclude that a jury could find that, considering the context of defendant's overall conduct, his statement "I have an AR-15 right fucking here. Do we need that?" would cause a reasonable person to fear unlawful violence. Defendant was becoming increasingly agitated in his encounter with the officers by the side of the road in the dark of night. Defendant was standing directly next to his car when he told the officers that he had an AR-15 "right fucking here," pointing to the back seat of his car. And this statement followed a long, drawn-out interaction lasting over an hour during which defendant was adamant that the officers had no right to tow his car. Defendant made clear multiple times leading up to the "AR-15" comment that he would defend himself if the officers sought to tow his car. Sergeant Molgano testified that defendant did not appear to be joking and that he believed he was in jeopardy. And Sergeant Molgano testified that at various points in their encounter, defendant engaged in staring contests with him for periods of time when nobody spoke. Under these circumstances, a jury could reasonably conclude that such a statement would cause a reasonable person to fear that defendant intended to use the AR-15 that he had nearby to keep the officers from towing his vehicle.

¶ 18. We likewise reject defendant's argument that his speech "challenging police authority" is political speech that implicates First Amendment protections. Defendant compares his statement to that in Watts, where the U.S. Supreme Court found that a defendant's statement—"If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."—was "political hyperbole" rather than a true threat. 394 U.S. at 706, 708. In Watts, the defendant made his statement during a public rally on the Washington Monument grounds. Id. at 706. The Court described defendant's statement as "a kind of very crude offensive method of stating a political opposition to the President." Id. at 708. Defendant's statement here is not comparable to that in Watts. While he may have expressed political viewpoints at other times during his prolonged roadside encounter, defendant's reference to his AR-15 was not part of any debate on public issues. A jury could conclude that defendant made this statement in order to dissuade officers from towing his car because they feared violence would result otherwise.

¶ 19. Nor are we persuaded by defendant's argument that communication to police officers is "fundamentally different" compared with other cases involving threats. As noted above, we evaluate whether speech is a true threat from the perspective of an ordinary, reasonable person familiar with the context of the communication. Noll, 2018 VT 106, ¶ 37. The fact that the target of the communication was a police officer must be considered as part of the context of the communication, but it does not heighten the standard for what constitutes a threat. In the Hawaii Supreme Court case defendant cites, the court similarly said that it evaluated threats objectively, considering the "particular attributes" of the subject of the communication relevant for this determination. State v. Valdivia, 24 P.3d 661, 675 (Haw. 2001). The court there did not suggest, nor do we accept, that threats to police officers are "fundamentally different."

¶ 20. We recognize that, as defendant notes, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." City of Houston v. Hill,

8

482 U.S. 451, 462-63 (1987) (affirming invalidation of city ordinance prohibiting speech that "in any manner . . . interrupt[s]" an officer). However, defendant's statements here were not mere opposition to police action. Contrary to defendant's characterization of this interaction as "[m]ultiple armed and trained law enforcement officers . . . accost[ing] a lone middle-aged man, who wanted to go home," there is no evidence that either officer drew his weapon, threatened defendant with physical violence, or even raised his voice. Rather, defendant told the officers he had an AR-15 within his immediate access and suggested that he was willing to use it in response to the officers telling defendant his car would be towed, stated that he would defend himself, and engaged in silent staring contests with Sergeant Molgano. Considering this context, including the fact that the target of the statements was a police officer, and that defendant made the statements following a stop for a broken headlight, there is sufficient evidence for a jury to conclude that an ordinary, reasonable person would interpret the statements as a threat of serious bodily injury.

¶ 21. Finally, we are unpersuaded by defendant's comparisons to various other cases involving "threatening behavior." Those cases are distinguishable both legally and factually. Legally, all three cases defendant cites involved application of prohibitions against "threatening behavior" distinct from the criminal threatening statute. See State v. Johnstone, 2013 VT 57, 194 Vt. 230, 75 A.3d 642 (reviewing determination that defendant had violated probation condition prohibiting "threatening behavior"); State v. Sanville, 2011 VT 34, 189 Vt. 626, 22 A.3d 450 (mem.) (same); State v. Albarelli, 2011 VT 24, 189 Vt. 293, 19 A.3d 130 (reviewing conviction for "threatening behavior" under disorderly conduct statute). In those cases, this Court did not squarely reach the question whether the statements at issue rose to the level of constitutionally unprotected "true threats."

¶ 22. In addition, these cases are all factually distinguishable. In Johnstone, we reversed a trial court's determination that a defendant violated the same probation condition by telling his girlfriend that his probation officer was going to "end up in a body bag" because there was no

9

evidence that the defendant knew the probation officer was in earshot. 2013 VT 57, ¶ 17. We acknowledged that the statements were menacing but concluded that there was no evidence that the defendant intended to put his probation officer in fear of harm or to convey an intent to harm her. Id. ¶ 18. In Sanville, the defendant quarreled with his landlord, at times suggesting he would destroy or damage a mobile home, and on at least one occasion, said he was going "to kick [landlord and her husband's] butts." 2011 VT 34, ¶ 3 (alteration in original). At no time did the defendant approach or make a physical gesture towards the landlord. This Court described the defendant's conduct as "mouthy and obnoxious," and reversed the revocation of the defendant's probation on the ground that the probation condition prohibiting "violent or threatening behavior" did not give the defendant adequate notice that the described conduct would constitute a violation. Id. ¶ 10. And in Albarelli, a defendant approached a voter registration table on Church Street, began ranting about the Obama candidacy loudly with his hands in his pockets or arms crossed, and would not leave when a volunteer asked him to. 2011 VT 24, ¶ 2. We overturned the defendant's conviction for threatening behavior under the disorderly conduct statute because, among other things, the defendant did not direct his threats against anyone, threaten to touch anyone, use profanity or abusive language, or convey any intent to harm another person. Id. ¶ 24. In this case, as noted above, defendant did make statements that a reasonable person could construe as threatening physical injury; the jury could conclude that defendant was not simply "mouthing off"; and defendant directed his menacing statements to the officers. In short, the facts of the cases defendant cites in support of his argument are not comparable to the facts of this case.

## II. Impeding an Officer - Jury Instruction

¶ 23. The impeding statute makes it a crime to "hinder" a public official acting under the authority of the State. 13 V.S.A. § 3001(a). The trial court instructed the jury on the impeding charge in relevant part as follows:

10

The second element is that [defendant] knowingly hindered [Officer] Neily. To hinder an officer means to slow down or to make more difficult the officer's progress towards accomplishing an objective, to delay or impede or interfere with that person's progress . . . .

. . . .

The last essential element is that [defendant] had no legal right to engage in the acts alleged to have hindered [Officer Neily]. A failure to follow an officer's command by itself is not a crime. There is no legal right, however, to threaten a law enforcement officer with physical harm, to prevent the officer from discharging an officer duty, or to engage in conduct in defiance of a command that interferes with the officer's ability to complete his lawful duty.

. . . .

I also instruct you that you must be unanimous as to the specific acts or conduct of the defendant that forms the basis for any guilty verdict as to this count.

¶ 24. Defendant did not object to the court's instructions at trial. On appeal, defendant contends that his impeding conviction must be vacated on the basis of the jury instructions because the definition of "hinder" impermissibly allowed the jury to convict if defendant's act merely delayed the officer's performance; in explaining the necessary unlawful act, the court erroneously instructed the jury that defendant had no right "to engage in conduct in defiance of a command that interferes with the officer's ability to complete his lawful duty"; the instructions failed to guarantee unanimity; and the instructions authorized the jury to convict defendant on the basis of lawful conduct.

¶ 25. We review unpreserved challenges to jury instructions for plain error. See V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); State v. Cahill, 2013 VT 69, ¶ 14, 194 Vt. 335, 80 A.3d 52 (reviewing challenge to jury instructions for plain error on appeal where defendant did not object at trial). In reviewing for plain error, we look to "the instructions as a whole to determine if they breathe the true spirit of the law, and if there is no fair ground to say that the jury has been

11

misled." State v. Waters, 2013 VT 109, ¶ 16, 195 Vt. 233, 87 A.3d 512 (quotation omitted). "Plain error will be found only in rare and extraordinary cases where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Gagne, 2016 VT 68, ¶ 31, 202 Vt. 255, 148 A.3d 986 (quotation omitted). We consider four factors in conducting our plain error analysis: "(1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." State v. Welch, 2020 VT 74, ¶ 8, __ Vt. __, __ A.3d __ (quotation omitted). Applying these standards, we consider defendant's challenges in turn.

## A. The Definition of "Hinder"

¶ 26. We conclude that the trial court's definition of "hinder" was not plain error because it was consistent with the case law and instructions we have previously approved, and defendant did not request any additional language. Defendant contends that this instruction is incorrect because the State must prove the defendant "actually hindered" the officer rather than "merely delayed" him. We have consistently defined "hinder" in this context as "to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress"—exactly the definition the trial court used in this case. See State v. Berard, 2019 VT 65, ¶ 9, __ Vt. __, 220 A.3d 759; State v. Neisner, 2010 VT 112, ¶ 20, 189 Vt. 160, 16 A.3d 597; State v. Stone, 170 Vt. 496, 499, 756 A.2d 785, 788 (2000); State v. Dion, 154 Vt. 420, 423, 578 A.2d 101, 103 (1990). It is true that we have required that a defendant's conduct actually hinder or impede an officer in order to qualify as hindering under § 3001. See Berard, 2019 VT 65, ¶ 10; Neisner, 2010 VT 112, ¶ 14. But, as noted above, the very decisions that have required "actual" hindrance contemplate that a defendant may "actually hinder" an officer by delaying or interfering with the officer's progress. See Berard, 2019 VT 65, ¶ 9; Neisner, 2010 VT 112, ¶ 20.

12

¶ 27. We have implicitly recognized that the significance of the hindrance may be relevant to the question of whether a defendant "actually hinders" an officer, in that the impeding convictions we have upheld involved "substantial interference" or actions that "significantly impeded" an officer. Berard, 2019 VT 65, ¶ 9. And we have cast doubt on the notion that § 3001 criminalizes "any unlawful action, no matter how slight or brief, that for any moment delays or interferes with the lawful execution of an officer's duties." Id. ¶ 13. However, in this case, we cannot conclude that the court's failure to include language reflecting these principles on its own initiative rose to the level of plain error. This is not a case of momentary and inconsequential interference with an officer's actions, and in the absence of any objection, the court's failure to include an instruction addressing the significance of the interference does not seriously affect the "fairness, integrity, or public reputation of judicial proceedings." Welch, 2020 VT 74, ¶ 8 (quotation omitted). We therefore decline to reverse on the basis of the trial court's definition of "hinder."

## B. Unlawful Act and Defiance of a Command

¶ 28. As the trial court instructed, and consistent with our case law, the act that hinders an officer must be one that the defendant had no legal right to engage in. Defendant argues that by instructing the jury that defendant had no right "to engage in conduct in defiance of a command that interferes with the officer's ability to complete his lawful duty," the court improperly allowed the jury to convict for impeding based solely on defendant's failure to comply with the officer's command, in violation of our holding in State v. Stone, 170 Vt. 496, 756 A.2d 785 (2000).

¶ 29. This argument warrants further explanation. We have long held that the interference supporting an impeding charge "must be action that a defendant does not have the legal right to take." Id. at 499, 756 A.2d at 788 (quotation omitted). Accordingly, we have reversed impeding convictions where a defendant's interfering or impeding act was one that the defendant had a lawful right to undertake. See, e.g., State v. Buck, 139 Vt. 310, 313, 428 A.2d

13

1090, 1093 (1981) (reversing impeding conviction where "[i]n removing the light bulbs in question, without violence or threats, the defendant was merely dealing with his own property as he had a right to do"); see also State v. Harris, 152 Vt. 507, 509, 568 A.2d 360, 361 (1989) (affirming dismissal of information charging defendant with impeding conviction based on defendant's flushing cocaine down a toilet during police raid because, although defendant's act interfered with officer's ultimate goal of successfully prosecuting him, defendant's destruction of drugs did not violate any law). Stone involved an application of this principle.

¶ 30.   In Stone, an officer stopped the defendant's car because he recognized it as defendant's and was searching for the defendant's husband who had failed to return from furlough. The defendant's husband, who was in the passenger's seat acting "out of control," refused to comply with the officer's order to get out of the car. The officer then smashed the passenger window to gain access to the lock, at which point the defendant got out of the driver's side of the vehicle and walked towards the rear of the car. When the officer ordered the defendant to return to the driver's seat, she did not and continued walking. The officer left the passenger's side of the car to confront the defendant along the driver's side of the car and continued to order her to get back in the car until he arrested the defendant's husband, but she refused. On the basis of these actions, defendant was charged and convicted of hindering under 13 V.S.A. § 3001.

¶ 31.   On appeal, we recognized that the interference supporting an impeding conviction "must be action that a defendant does not have the legal right to take." Stone, 170 Vt. at 499, 756 A.2d at 788 (quotation omitted). The State contended that the defendant's actions were unlawful "because defendant did not have a legal right to ignore the officer's order to return to her seat in the car." Id. at 500, 756 A.2d at 788. We rejected that argument and reversed the conviction. In looking to other courts' rejection of such arguments, we recognized that "[i]f disobeying an officer were, in and of itself, sufficient to make out the crime of hindering, a police officer could transform inoffensive conduct into an act of hindering merely by giving an order, converting the character of

14

an event from nonpunishable to punishable by proclamation alone." Id. at 500-01, 756 A.2d at 788-89 (alteration omitted) (quotation omitted). While noting that disobeying an officer's command is often part of conduct that constitutes hindering, we concluded that failure to follow an officer's command is not, by itself, a crime. Id. at 501-02, 756 A.2d at 789-90. The fact that defendant had not yet reached the rear of the vehicle, and there was no indication that she intended to round the rear of the car and physically interfere with the arrest of her husband, was critical to our analysis. Id. at 498, 502-03, 756 A.2d at 787, 789-90.

¶ 32. In this case, the court told the jury, "A failure to follow an officer's command by itself is not a crime." However, the court also instructed, "There is no legal right . . . to engage in conduct in defiance of a command that interferes with the officer's ability to complete his lawful duty." We understand defendant to argue that this latter statement invited the jury to convict defendant simply for failing to follow an officer's command.

¶ 33. We reject this argument on plain-error review for several reasons. First, the court properly instructed the jury that an essential element of hindering is that defendant "had no legal right to engage in the acts alleged to have hindered" Officer Neily. And the court expressly and accurately instructed the jury that "[a] failure to follow an officer's command by itself is not a crime." The instructions clearly conveyed that the jury could not return a guilty verdict for hindering based solely on defendant's failure to follow the officer's commands. Second, defendant did not argue to the jury that he had a legal right to disregard any of the officers' instructions. To the extent that the jury might rely on defendant's reference to his AR-15 as the unlawful hindering act, defendant argued that his action was lawful, and that it did not hinder the officers. With respect to his other conduct, defendant argued that he did not actually hinder anything because the officers were able to maintain safety on the scene and tow the car. Under these circumstances, any ambiguity arising from the unobjected-to sentence now challenged on appeal does not "strike[] at

15

the heart of defendant's constitutional rights or result[] in a miscarriage of justice." Gagne, 2016 VT 68, ¶ 31 (quotation omitted).

## C. Unanimity and Conviction for Lawful Acts

¶ 34. Defendant's remaining challenges to the jury instructions require little analysis. He asserts that the court's instruction failed to guarantee unanimity as to what acts defendant could have committed to impede, and that, given the State's argument encouraging the jury to consider the totality of the encounter, there is a reasonable likelihood that at least some jurors relied on clearly lawful acts to support the guilty verdict of impeding. But the court expressly told the jury, "you must be unanimous as to the specific acts or conduct of the defendant that forms the basis for any guilty verdict as to this [impeding] count," and the jury instructions were clear that the jury had to determine that defendant engaged in conduct he had no legal right to engage in. We presume that these instructions were followed. State v. Redmond, 2020 VT 36, ¶ 40, __ Vt. __, 234 A.3d 958. There is, therefore, no error as to the unanimity instruction.

## III. Impeding a Public Officer

¶ 35. Under 13 V.S.A. § 3001(a):

> A person who hinders an executive, judicial, law enforcement, civil, or military officer acting under the authority of this State or any subdivision thereof, or who removes a weapon from the person of a law enforcement officer, or who deprives a law enforcement officer of the use of a weapon, shall be imprisoned not more than three years or fined not more than $500.00, or both.

We have held that "a defendant violates § 3001 if the defendant (1) takes an action that the defendant has no legal right to do and (2) that action actually results in impeding an officer in the lawful execution of the officer's duties." Berard, 2019 VT 65, ¶ 10.

¶ 36. Defendant argues that the evidence presented at trial was insufficient to support his conviction for impeding a public officer under 13 V.S.A. § 3001.[1] Specifically, defendant argues that under this Court's decision in Berard, defendant's conviction must be vacated because his conduct was not "on par with removing or disabling an officer's weapon." Defendant also argues that the State failed to prove that the act underlying the impeding charge was unlawful, and that defendant did not, in any event, actually prevent the officers from being able to tow the car. The State agrees with defendant's reading of Berard—specifically that "only illegal acts that rise to the level of removing or disabling the use of an officer's weapon may support a conviction for hindering"—and urges this Court to overrule our 2019 decision, arguing that neither the plain language of 13 V.S.A. § 3001 nor "any established tenets of legislative interpretation" support that decision.

¶ 37. We disagree with both parties' overreading of Berard and decline to overrule our 2019 decision in that case, but we clarify its narrow holding. Whether the jury convicted based on defendant's statements about his AR-15, or on his attempt to reenter his car and drive away in violation of the officer's command, we conclude that the State offered sufficient evidence to establish that defendant engaged in unlawful conduct that actually interfered with Officer Neily's ability to perform his authorized duty.

A. State v. Berard

¶ 38. In Berard, we held that a civil motor vehicle violation in and of itself may not constitute a violation of § 3001. 2019 VT 65, ¶ 13. There, an officer stopped defendant after observing her commit a traffic violation. When the officer approached the car, the defendant

---

[1] We have not previously determined whether sufficiency challenges should be evaluated with reference to the applicable legal requirements or the instructions as they were actually given. We decline to address the question here. As set forth above, defendant contends that the instructions were not sufficiently exacting; because we conclude that the evidence is sufficient even when evaluated with reference to the requirements of the applicable law as opposed to the jury instructions, we need not decide which framework applies.

17

recalled a prior interaction with the officer in which he allegedly "maced" her and thus asked the officer to call another officer. The first officer requested the defendant's license, registration, and proof of insurance, and the defendant said that she had the documents, but refused to provide them, again requesting that another officer be called. When the second officer arrived, the defendant extended the documents out of the car, and the first officer grabbed the defendant's arm, pulled her out of the car, and arrested her under 13 V.S.A. § 3001.

¶ 39. In evaluating the case, this Court applied the test established through our prior decisions that a defendant violates § 3001 if the defendant "(1) takes an action that the defendant has no legal right to do and (2) that action actually results in impeding an officer in the lawful execution of the officer's duties." Id. ¶ 10. We concluded that there was no question defendant's refusal to provide the documents was unlawful under 23 V.S.A. § 1012(b). Id. ¶ 11. However, we also concluded that "without more," this civil violation alone cannot constitute a violation of § 3001. Id. ¶ 12.

¶ 40. In reaching this conclusion, we noted that "[p]laced in context, 'a person who hinders a law enforcement officer' describes a level of interference akin to removing or disabling the use of an officer's weapon." Id. ¶ 13 (alterations omitted). This comparison was based on the plain language of § 3001, which prohibits "hinder[ing]" an officer, "remov[ing] a weapon from the person" of an officer, and "depriv[ing]" an officer of the use of their weapon.[2] This was one of several considerations that we relied on in concluding that a civil violation of the motor vehicle code without more may not provide the basis for an impeding-officer offense under § 3001. Id. ¶ 17. We also emphasized the mismatch between the potential prison sentence for the crime of

---

[2] Notably, the comparison made in Berard is not one to disarming an officer—an entirely separate offense prohibited under 13 V.S.A. § 3019 and punishable by up to ten years in prison and $10,000 in fines. Section 3001(b) expressly excludes firearms from the definition of "weapon" as it relates to the impeding statute.

impeding and the modest fine associated with a civil motor vehicle violation. See id. ¶¶ 14-15. Contrary to the parties' assertions, we did not hold that an unlawful act that hinders an officer must be comparable to removing an officer's (non-firearm) weapon in order to constitute impeding. The parties have misconstrued a factor we considered in our analysis as a holding of our decision in Berard.

¶ 41. Although in our analysis we did not disentangle the distinct "unlawful act" and "actual impeding" elements of the impeding crime, our holding is best understood with reference to the latter. We acknowledged in Berard that the defendant's refusal to provide her license, registration, and insurance was unlawful, and we did not take up the defendant's invitation to hold that only criminal acts can be the basis for an impeding conviction. Id. ¶ 11. Our holding that a civil violation of the motor vehicle code, without more, cannot sustain an impeding conviction was tied more directly to the requirement that the unlawful act actually hinder—and that the hindrance not be intrinsic to the motor vehicle violation itself. Although the defendant's conduct in Berard likely did hinder the officer's effort of processing the violation, any hindering that arose from the failure to provide a license and registration was baked into the civil violation itself. If violation of that statute were sufficient to support a hindering charge, then every failure to provide a license and registration would constitute hindering, and be subject to criminal penalties, because by definition the failure to produce license and registration interferes with an officer's progress. In avoiding this incongruity in Berard, we did not hold that a civil motor vehicle violation can never be an unlawful act underlying a hindering conviction. Even a parking violation could conceivably lead to a hindering conviction if a person parked illegally at a crime scene to interfere with the officers' investigation. But where the hindering effect of the motor vehicle violation is part and parcel of the violation itself, we concluded that the Legislature intended to assess the civil penalties set forth in the motor vehicle code rather than criminal liability for impeding. That is the lesson of Berard, and we see no reason to overrule our narrow decision in that case.

¶ 42.    Because the elements of the impeding statute do not require a comparison of the severity of defendant's actions to removing an officer's weapon, or to the severity of other conduct previously found to constitute impeding, defendant's comparisons of the facts of this case to other impeding cases are unpersuasive.  In particular, defendant's argument argues that his conduct is distinguishable from the "violent and physically aggressive" conduct in prior cases where we have upheld impeding convictions is not persuasive.  See, e.g., State v. Oren, 162 Vt. 331, 333, 647 A.2d 1009, 1010-11 (1994) (affirming impeding conviction where defendant parked her truck, blocking officer's car, ran towards the car screaming obscenities, attempted to grab officer's badge, and pounded on officer's hood and windshield); State v. Dion, 154 Vt. 420, 424-25, 578 A.2d 101, 103-04 (1990) (affirming conviction for hindering under plain-error review where defendant made threats to warden and physically interfered with warden's attempt to process another individual for fish and game violation), overruled on other grounds by State v. Brooks, 163 Vt. 245, 658 A.2d 22 (1995).  But, conduct need not be overtly violent or aggressive to hinder an officer.  In other cases, we have concluded that entirely non-violent conduct can form the basis of an impeding charge.  See, e.g., Neisner, 2010 VT 112, ¶ 14 (concluding that making false statements to officer was underlying unlawful conduct for impeding charge where it hindered officer's investigation of crime).  It is sufficient to constitute a violation of § 3001 if defendant engaged in unlawful conduct and if that conduct hindered Officer Neily in carrying out his authorized duties.

## B.  Underlying Unlawful Conduct

¶ 43.    As noted above, an essential element of an impeding charge is that the defendant's hindering action is one that the defendant has no legal right to take.  See supra, ¶¶ 29-31; see also Stone, 170 Vt. at 500, 756 A.2d at 788 ("We regard the test as being one of whether or not the respondent has a legal right to take the action which results in impeding the officer . . . . Only when he has no such right can his actions be an unlawful hindrance." (quoting Buck, 139 Vt. at 313, 428

20

A.2d at 1093)). The State argued at trial and again on appeal that the acts underlying the impeding charge were defendant's threats and his defiance of the officers' command that defendant not get in his car to drive away. Because the jury instructions allowed the jury to return a guilty verdict if the jurors unanimously found defendant guilty on either basis, we can only affirm if the State's evidence was sufficient to support convictions on both grounds. We consider whether the State introduced sufficient evidence of an unlawful act under each theory.

¶ 44. With respect to the theory that defendant impeded Officer Neily by threateningly referencing his AR-15, the underlying facts regarding this threat in the context of the charge of impeding Officer Neily are the same as those underlying the charge that defendant criminally threatened Officer Molgano in violation of 13 V.S.A. § 1072.[3] Thus, for the reasons set forth in our discussion of the criminal threatening charge, see supra, ¶¶ 9-22, the State introduced sufficient evidence to prove that defendant made an unlawful threat to Officer Neily.

¶ 45. We likewise conclude in the face of the officers' commands that defendant had no legal right to enter his car for the purpose of continuing to drive an unregistered, uninsured car that was lacking a headlight. Defendant argues that he had a right to reenter his car, that he was not under arrest, and that his failure to obey the officer's command was not unlawful under State v. Stone, 170 Vt. 496, 756 A.2d 785 (2000). The State, however, views this conduct as an attempt to drive an unregistered, uninsured car, which defendant made clear was his intent and which

---

[3] The State also charged defendant with criminal threatening of Officer Neily based on these same facts. Because the elements of the criminal threatening charge made up part of the underlying unlawful conduct for the impeding charge, the trial court—in an effort to avoid double jeopardy concerns—instructed the jury that if it found defendant guilty of impeding Officer Neily, it should not separately consider the criminal threatening charge against Officer Neily.

would have been in violation of 23 V.S.A. §§ 301, 800, and 1222(c), requiring that drivers have valid registration, insurance, and functioning equipment.[4]

¶ 46.    We recognize that failure to obey an officer's command is not by itself unlawful. Stone, 170 Vt. at 502, 756 A.2d at 790. But in this case—in contrast to Stone—the officer commanded defendant to refrain from engaging in unlawful conduct. In Stone, notwithstanding the officer's command, the defendant was legally entitled to get out of her car and walk away while the officer attempted to arrest her husband; in this case, in the face of the officer's command, defendant had no legal right to attempt to drive his unregistered, uninsured vehicle with a non-functioning headlight. See 23 V.S.A. § 4(24) (" 'Operate' . . . shall also include an attempt to operate . . . ."); id. § 301 ("A person shall not operate a motor vehicle . . . on any highway unless such vehicle is registered as provided in this chapter."); id. § 800 ("No owner of a motor vehicle required to be registered, or operator required to be licensed or issued a learner's permit, shall operate or permit the operation of the vehicle upon the highways of the State without having in effect an automobile liability policy . . . ."). For that reason, the State's evidence that defendant attempted to drive the unregistered, uninsured car was sufficient to prove the "unlawful act" element of impeding based on his attempt.[5] Consistent with our analysis in Berard, as clarified above, a civil violation (or attempted violation) of the motor vehicle code cannot by itself constitute

---

[4]  At trial, the State framed its argument as defendant having no legal right to disobey Officer Neily's lawful command not to get in the car because driving an unregistered, uninsured vehicle would be a violation of the motor vehicle code. On appeal, the State focuses its argument more directly on defendant having no legal right to attempt to drive an unregistered, uninsured vehicle.

[5]  The State also argues that defendant's effort to get back into his car was unlawful insofar as he defied a lawful order of a law enforcement officer. See 23 V.S.A. § 1013 ("Enforcement officers may . . . make reasonable orders in enforcement of this title [regulating motor vehicles] or to prevent or alleviate traffic congestion, property damage, or personal injury. No person may knowingly fail or refuse to comply with any lawful order or direction of any enforcement officer."). Because we affirm on the ground that defendant's conduct was unlawful in its own right, we do not address this alternate argument.

22

criminal impeding under 13 V.S.A. § 3001; but coupled with evidence that the action actually results in impeding an officer in the lawful execution of the officer's duties (beyond whatever hindrance is intrinsic to the violation itself), it can support an impeding conviction.

## C. Actual Interference with Officer Duties

¶ 47. Upon establishing an unlawful act, the State must prove that defendant's act actually resulted in impeding an officer in the lawful execution of the officer's duties. Berard, 2019 VT 65, ¶ 10; see also Neisner, 2010 VT 112, ¶ 14 (noting that "impeding charge requires an unlawful act that actually hinders the officer" (emphasis added)). Under § 3001, the officer hindered must be acting "under the authority of this State." 13 V.S.A. § 3001(a).

¶ 48. The State argued that by making criminal threats and attempting to get back in his car in defiance of the officers' orders, defendant hindered Officer Neily's ability to secure the vehicle for purposes of having it towed and maintaining officer safety. On appeal, defendant challenges the sufficiency of the State's evidence as to the "actual interference" element. Defendant argues that his actions did not hinder Officer Neily's ability to secure defendant's car. Specifically, defendant argues that he did not prevent Officer Neily from calling a tow truck and did not interfere with the tow truck operator's removal of his car. It was Officer Neily's actions, and inaction, that delayed resolution of the encounter that night, not defendant's conduct.[6]

¶ 49. We conclude that a reasonable jury could find that defendant's conduct actually interfered with Officer Neily's attempt to secure defendant's car. As noted above, to "hinder"

---

[6] Defendant did not dispute at the trial court or in his primary brief on appeal that securing the car was within Officer Neily's lawful authority. In his reply brief, defendant argues for the first time that attempting to secure defendant's car upon learning that it was unregistered and uninsured, rather than issuing a ticket and allowing defendant to drive away, was beyond Officer Neily's lawful authority. The evidence developed at the trial court was not focused on this issue, and defendant advanced this argument only after the State's responsive brief on appeal. Accordingly, we decline to address this new issue, raised for the first time in defendant's reply brief on appeal. See Trevor v. Icon Legacy Custom Modular Homes, LLC, 2019 VT 54, ¶ 97, 210 Vt. 614, 217 A.3d 496.

means "to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress." Berard, 2019 VT 65, ¶ 9 (quotation omitted). Section 3001 does not require proof that a person make an officer's performance of duties impossible, but rather that the person intentionally interferes with the officer's ability to accomplish the task. Oren, 162 Vt. at 335, 647 A.2d at 1012. To the extent the statute requires a significant or substantial interference, there is sufficient evidence to support the jury's verdict. Defendant's unlawful threats regarding his AR-15 made it more difficult for Officer Neily to accomplish his goal of securing the car because Officer Neily reasonably feared that defendant may engage in unlawful violence if he grounded or towed the car. Further, defendant's attempts to get back into the car and his insistence that he was going to drive his uninsured, unregistered vehicle with a broken headlight on a dark, rainy night forced Officer Neily to follow through with the extreme measure of having the car towed rather than simply leaving it locked and parked.

Affirmed.

FOR THE COURT:

_____

Associate Justice

24